Margaret Dishinger, Appellee, v. Bon Air Catering, Inc., Defendant.
Appeal of John E. Johnson, Appellant.

Gen. No. 10,314.

Opinion filed March 8, 1949.
Released for publication March 26, 1949.

VINCENT O'BRIEN, of Chicago, for appellant.

ROBERT P. SULLIVAN, of Chicago, and J. E. BAIRSTOW, of Waukegan, for appellee.

MR. JUSTICE BRISTOW delivered the opinion of the court.

This is an appeal by John E. Johnson, attorney for the defendant corporation, in his personal capacity, from an order of the circuit court of Lake county adjudging him in civil contempt for refusal to comply with a decree entered in a receivership proceeding instituted by plaintiff, Margaret Dishinger, against the defendant corporation.

The appeal presents two legal issues: The scope and binding effect of the final decree and the order promulgated to enforce it; and the propriety of the order adjudging John E. Johnson in civil contempt for failure to comply therewith.

From the record it appears that plaintiff, Margaret Dishinger, obtained an award from the Industrial Commission of Illinois, which was reduced to judg-

ment, for the death of her husband in an accident arising out of, and in the course of his employment by the defendant corporation. This award was acknowledged, but never paid by the defendant corporation, and on January 18, 1943, plaintiff filed the complaint herein under secs. 86 and 87 of the Business Corporation Act (ch. 32, pars. 157.86, 157.87, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 32.088, 32.089]), seeking the appointment of a receiver and the liquidation of the assets of the defendant corporation so that payment could be made on her judgment.

Defendant's motion to dismiss was denied, and in its answer defendant denied ownership of the property referred to in the complaint, and asserted that it operated the premises under a rental agreement with the owners.

The cause was referred to a master before whom testimony was taken, and he found that the defendant corporation had certain contracts with the Albert Pick Co. which sold hotel and restaurant equipment, and that between June 7, 1938 and September 18, 1939, after the defendant corporation was incorporated, it paid the Albert Pick Co. some $11,274 on unsecured accounts, which together with the sums paid on secured accounts, amounted to $24,178.86. The money was paid for specific items of kitchen equipment, such as ranges, refrigerators, a dishwashing machine, tables, chairs, bars, glasses, dishes and other enumerated properties. This personalty is still on the original premises in Vernon Township on Milwaukee avenue where it is held in storage.

The master further found that defendant had engaged certain public accounts to supervise its accounts from 1938 to 1941, but, nevertheless, did not produce in this proceeding the balance sheets prepared by the accountants revealing defendant's assets and liabilities, thereby indicating by negative implication that the facts contained in those records did not sustain defendant's contention herein.

The master rejected the allegation asserted in defendant's answer that it merely rented the property from the owner. For the only lease offered by defendant was dated April 10, 1940, some two years after its incorporation, and involved merely the rental from William R. Johnson of "the golf course and club house, incidental buildings, appurtenances, fixtures and equipment thereunto appertaining." It did not even purport to cover any personal property, much less that which defendant had purchased in 1938 and 1939 from the Albert Pick Co.

Defendant's objections to the master's report were overruled, and stood as exceptions in the trial court where the question of the legal effect of the lease was reargued. The trial court overruled defendant's exceptions, confirmed the master's report, and entered a decree in accordance with the prayer of the complaint.

Under this decree of March 16, 1948, the court directed that proceedings be taken to liquidate the assets of the defendant corporation, that a receiver be appointed with title to all assets and property of the defendant corporation, and ordered him to take immediate possession thereof, and to prepare for the court an inventory of all assets within 15 days.

No appeal was ever taken from this decree of March 16, 1948, and it became final. However, defendant refused to comply therewith, for on April 15, when the receiver went out to the premises where the aforementioned personal property was stored, defendant, through its counsel, the appellant, John E. Johnson, refused him admittance, claiming that he had no right to enter the premises inasmuch as the buildings and the property within belonged to William R. Johnson. The appellant did admit, however, that he possessed an inventory of all the personal property on the premises, which he would present to the court.

As a result of this episode, plaintiff presented a motion requesting that the receiver be granted ad-

mittance to the premises in order to prepare the inventory specified in the decree of March 16, 1948. This motion was argued, and at the hearing John E. Johnson persisted in his refusal to admit the receiver within the premises, and reaffirmed his possession of the inventory which he promised to make available to the court. It was thereupon ordered, on April 27, 1948, that the inventory be turned over to the court, and that the receiver be admitted to the premises within 10 days.

Before the expiration of the 10 days, John E. Johnson filed a petition to vacate that order, wherein he retracted his admission that he possessed an inventory and asserted that the owner refused to allow him on the premises, and therefore he could not comply with the order of the court. Plaintiff answered this petition, asserting that it was within defendant's power to comply with said order of the court, and that his refusal was contumacious. At the hearing on this petition it was shown that John E. Johnson had an undivided one-eighth interest in the premises, and was a tenant in common with William R. Johnson.

The court, therefore, entered an order on May 14, 1948, finding John E. Johnson guilty of civil contempt and committing him to jail until he complies with the order of April 27, 1948, or until he is discharged by due process of law. From this order John E. Johnson has appealed to this court.

The theory of John E. Johnson's defense herein is that the original decree of March 16, 1948, was improper since it disposed of assets claimed adversely by William R. Johnson, who was not a party to this proceeding and, therefore, could not be affected thereby; that the enforcement order of April 27, 1948, directing John E. Johnson to turn over an inventory and admit the receiver to the premises was improper, since John E. Johnson discovered, several days after the order, that he did not possess the inventory, and

that he could not admit the receiver to his brother's property, even though he personally owned a one-eighth interest in it; and that inasmuch as he cannot comply with the enforcement order, he should not have been held in civil contempt.

This court will consider first the scope and binding effect of the decree of March 16, 1948. This decree was entered after hearings before the master, and arguments in open court where evidence was presented. The primary issue therein was whether the defendant corporation possessed any assets as alleged in the complaint, out of which plaintiff's award and judgment for compensation for the death of her husband could be satisfied under the terms of secs. 86 and 87 of the Business Corporation Act of Illinois (ch. 32, pars. 157.86, 157.87, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 32.088, 32.089]).

Defendant alleged in his answer that it merely rented the property referred to in the complaint, and therefore, had no assets which could be liquidated by a receiver. In support thereof, the only lease defendant offered was a document dated April 10, 1940, some two years after its incorporation, and subsequent to its purchase of the kitchen, dining, and bar equipment hereinbefore enumerated, from the Albert Pick Co. This document, moreover, referred only to the leasing of the "golf course and club house, incidental buildings, appurtenances, fixtures, and equipment thereunto appertaining." It did not refer to personal property of any nature. Nor did defendant present any other lease covering the personalty which plaintiff is seeking to liquidate, and which the records of the Albert Pick Co. indicate was purchased by the defendant corporation in 1938 and 1939.

Furthermore, from defendant's failure to produce any of the records of its assets and liabilities prepared by the firm of public accountants which it employed, the master legitimately inferred that such

evidence would be damaging to its cause. (*Elam v. Elam,* 294 Ill. 96; *People v. Small,* 319 Ill. 437; *Prudential Ins. Co. of America v. Bass,* 357 Ill. 72.)

On the basis of the foregoing evidence, the conclusions of the master that the property and assets referred to in the complaint belonged to the defendant corporation, which findings were affirmed by the trial court, were clearly supported by the evidence.

Defendant's contention that the order of the court of March 16, 1948, was in error, inasmuch as it disposed of property claimed adversely by William R. Johnson, who was not a party of record since he resided in Terre Haute, Indiana, outside of the jurisdiction of the court, is without substance.

The Illinois courts in accordance with prevailing judicial opinion have held that one not a nominal party to a suit may be deemed a party where he has control of the prosecution or defense in the furtherance of his own interest. (*Cole v. Favorite,* 69 Ill. 457; *Cheney v. Patton,* 144 Ill. 373; *Bechtel v. Marshall,* 236 Ill. App. 549, and cases cited therein; 139 A. L. R. 12; *Anderson v. West Chicago St. R. Co.,* 200 Ill. 329.)

In *Anderson v. West Chicago St. R. Co., supra,* the court stated at p. 335:

"Sometimes persons who are not parties to the record are bound by the judgment. Persons in whose behalf and under whose direction the suit is prosecuted or defended in the name of some other person fall within this category. (*Cole v. Favorite,* 69 Ill. 457; *Bennitt v. Star Mining Co.,* 119 id. 9.)"

In the instant case William R. Johnson is the principal stockholder, director and treasurer of the defendant corporation. In fact, so little importance is attached to the corporate entity that this treasurer permitted it to be dissolved by the attorney general while the litigation was pending.

The entire theory of the defense, moreover, is in the furtherance of William R. Johnson's interest. For

the legal effect, if defendant prevails, is that William R. Johnson will be deemed the owner of the property purchased from Albert Pick Co. by the defendant corporation, and no funds will be available out of which plaintiff's judgment could be satisfied by the defendant corporation. If, however, defendant's contention were overruled, and the assets were deemed the property of the corporation rather than that of William R. Johnson, payment could be made of plaintiff's judgment, and William R. Johnson would sustain a financial loss.

Furthermore, he has controlled the conduct of this litigation. His brother, John E. Johnson, is the attorney who has prepared the defense for the defendant corporation, and although said John E. Johnson owned a one-eighth interest in the real estate and attached property in which the assets were located, he refused to permit the receiver on the premises in defiance of the court order, on the ground that William R. Johnson had an "out of state" adverse interest in the assets. There is little doubt in whose interest John E. Johnson has prepared and conducted this defense. For the purpose of avoiding open participation in this litigation, however, the corporate veil is cautiously resurrected to shield William R. Johnson.

Courts of equity, however, will not countenance the misuse of the corporate fiction. (139 A. L. R. 63; *McGregor v. Provident Trust Co. of Philadelphia,* 119 Fla. 718, 162 So. 323 (1935); *Saxlehner v. Eisner,* 140 F. 938.) Inasmuch as it appears that the cause of the defendant corporation is presented so as to protect and advance the interest of William R. Johnson, who is the motivating force behind the defense, he will be deemed a party in the broad connotation of that term, and will be bound by the orders entered in these proceedings.

Furthermore, since his interest in the personalty and his rights under the lease were presented in

the pleadings, at the hearings before the master, and in the arguments and evidence offered in the trial court, it can reasonably be concluded that William R. Johnson has had his "day in court," and his rights have been adjudicated herein. The terms of the decree appointing the receiver, ordering him to take possession of the property and prepare an inventory was in accordance with the provisions of the Business Corporation Act, and ample power is vested in the court of equity to enforce its decree under the Chancery Act (ch. 22, par. 42, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 106.06]).

The defendant corporation did not appeal this decree of Mar. 16, 1948, and it became final. The determination of the court in its order overruling defendant's exceptions to the master's report was *res judicata,* and could not be collaterally attacked. (*Hart Steel Co. v. Railroad Supply Co.,* 244 U. S. 294, 299; *Maggio v. Zeitz,* 333 U. S. 56.) Upon defendant's failure to permit the receiver to enter the premises to inventory the property in accordance with this decree, the order of April 27, 1948, was entered requiring John E. Johnson to permit the receiver to enter the premises where the personalty was located, and to turn over the inventory of the property, which he stated he possessed that very day in open court.

The function of such a turn over order is analyzed in *Maggio v. Dietz, supra,* where the court stated:

"The nature and derivation of the remedy make it clear that it is appropriate only when the evidence satisfactorily establishes the existence of the property or its proceeds, and possession thereof by the defendant at the time of the proceedings."

Although John E. Johnson cites this case and excerpt as authority to support his contention that the order of April 27 was unwarranted, it is the opinion of the court that the order was clearly within the

standard prescribed by the court, inasmuch as John E. Johnson reiterated on the day the order was entered that he possessed an inventory and offered to submit it to the court. Here was no mere proof of prior possession but possession "at the time of the proceedings."

Several days thereafter, however, John E. Johnson retracted his admission and sought to be excused from complying with this order on the diverse grounds that: He couldn't find the inventory; William R. Johnson refused him permission to enter the premises to make one; William R. Johnson told him there was no personal property owned by the corporation on the premises; and that he would be acting contrary to law if he attempted to carry out the court's order.

It was adduced at the hearing on this petition that John E. Johnson owned an undivided one-eighth interest in the real estate and buildings in which the property scheduled to be inventoried is located, and was, therefore, a tenant in common with William R. Johnson. Inasmuch as one tenant in common cannot be guilty of committing a trespass on the property which he owns in common with others (*Conklin v. Newman*, 278 Ill. 30), it was clearly within John E. Johnson's legal power to admit the receiver into the premises. Furthermore, the alleged assertions of William R. Johnson that the property contained therein did not belong to the corporation was contrary to the determination of the court by the decree of Mar. 16, 1948, overruling defendant's exceptions to the master's report and ordering a decree in accordance with the prayer of the complaint, and was tantamount to an attempt to relitigate the entire issue determined by that decree.

The comments of the court in *Wilson v. Fisher*, 369 Ill. 538, 542 seem particularly pertinent with reference to this issue: The court stated:

"An examination of the various records involved in this litigation discloses no bona fide effort and offer to comply with the original decree to the extent of Prochnow's ability, but a continuous effort to evade, nullify or modify it in violation of the established rule as above stated. This cannot be done. That decree remains the law of this case and the measure of Prochnow's obligation about which there should be no further quibbling or efforts at evasion."

On the basis of the evidence adduced at the hearing, the circuit court found that it was within John E. Johnson's power to comply with the enforcement order, and issued a further order placing him in civil contempt.

It is John E. Johnson's contention that this contempt order was contrary to the law and the weight of the evidence. Reliance is placed upon the aforementioned *Maggio* case where the court stated that if in the contempt proceeding the party charged therewith could properly establish, as a defense, lack of present possession, a contempt order may not issue.

The court in the *Maggio* case, however, further stated, "Of course if he offers no evidence as to his inability to comply with the turnover order, or stands mute, he does not meet the issue. Nor does he do so by evidence, or by his own denials which the court finds incredible in context."

In the case at bar the appellant merely offered during the colloquy of counsel that he was mistaken in his statement that he possessed an inventory, despite the fact that he claimed such possession both out at the premises and again in open court.

This sudden denial, together with the evidence that as a tenant in common with William R. Johnson the appellant had the legal power to admit the receiver, led the court to reasonably conclude that appellant's failure to comply with the order was contumacious and merely an attempt to protect and relitigate the inter-

est of his brother, William R. Johnson. This conclusion can be sustained even under the broad pronouncements of the court in the *Maggio* case where the court recognizes that in a contempt proceeding the denials may be found to be incredible in context.

This determination of the circuit court, moreover, is consistent with the Illinois authorities in civil contempt cases where it has been held that the burden is on the party charged to establish his inability to comply with the order and to show why he should not be held in contempt. (*People v. Zimmer,* 238 Ill. 607; *Shaffner v. Shaffner,* 212 Ill. 492.)

In *Harrigan v. Stone,* 237 Ill. App. 314, in affirming the commitment for contempt the court stated: ''The effect of the affidavit filed by Harrigan is a suggestion on his part to relitigate the subject matter of the prior proceedings . . . . if the decrees of the courts are to rest so lightly upon the shoulders of those against whom they are rendered, and if they can be defeated by such excuses as are offered by plaintiff in error, then property rights and property interest would soon become insecure.''

In the instant case appellants failure to open the door of premises, to which he had a title, to the receiver, and his inability to account in any way for the inventory which he admitted he possessed on the day the enforcement order was entered, warranted the issuance of the contempt order. Therefore, inasmuch as the circuit court committed no error in the decree and orders entered in the enforcement thereof, the judgment of that court should be affirmed.

*Judgment affirmed.*