BERLINGER'S, INC., Plaintiff-Appellee, *v.* BEEF'S FINEST, INC., *et al.*, Defendants-Appellants.

First District (4th Division)    No. 77-84

Opinion filed January 26, 1978.—Rehearing denied February 23, 1978.

Joseph J. Ticktin, of Chicago, for appellant David Mizaur.

Philip S. Wolin, Ltd., of Chicago, for appellee.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Berlinger's, Inc., brought an action against Beef's Finest, Inc., David Mizaur, its president and sole shareholder, and Linda Mizaur, its secretary, to recover monies due plaintiff for various meat products that were sold and delivered to the defendants. The trial court, sitting without a jury, dismissed the cause as to Linda Mizaur and entered judgment against Beef's Finest, Inc., and David Mizaur in the amount of $67,825.57. Defendant David Mizaur appeals.

We affirm.

The issues presented for review are (1) whether the evidence

warranted piercing the corporate veil and imposing personal liability upon the defendant David Mizaur for the corporation's obligation; (2) whether the trial court erred in denying the motion by defendant David Mizaur for a finding and judgment in his favor at the close of plaintiff's case; (3) whether the amended complaint states a cause of action against David Mizaur; and (4) whether the court erred in admitting the application for credit as a business record.

Plaintiff, Berlinger's, Inc., is primarily engaged in the wholesale meat business. Plaintiff's president, Kenneth Berlinger, testified that in October 1974 he received a telephone call from David Mizaur inquiring about the purchase of meats. Plaintiff's president orally agreed to sell various meat products to the corporate defendant subject to a credit check, and David Mizaur agreed to pay for the deliveries on a weekly basis and instructed plaintiff's president to deliver the meats to two locations, 9401 South Ashland and 1240 East 47th Street, Chicago, Illinois. Prior to filling the order, Mr. Berlinger mailed a credit application to the customer and upon its return, checked the references therein. Berlinger testified that he relied on the personal credit of David Mizaur as well as Beef's Finest's credit in making his decision to deliver substantial amounts of meat on credit. The credit application was admitted into evidence as a business record, pursuant to Supreme Court Rule 236 (Ill. Rev. Stat. 1975, ch. 110A, par. 236). The application form bears the name of Beef's Finest, Inc., as the credit applicant, and also bears what is purportedly David Mizaur's signature as president of Beef's Finest, Inc.

Plaintiff started making deliveries in November 1974 which were accepted by defendants. When plaintiff did not receive weekly payments for 2 weeks of deliveries in the latter part of November 1974, Berlinger called David Mizaur and advised that unless payments were made, no more meat would be delivered. Berlinger testified that Mizaur advised him that plaintiff would receive a check upon the next delivery of meat to Beef's Finest, Inc. Relying on Mizaur's representations, plaintiff's president again delivered meat to Beef's Finest, Inc., and received a check in the amount of $22,622.54, such check bearing the purported signature of David Mizaur.

The check was deposited in plaintiff's account and, within a short time, the bank notified plaintiff that a stop payment order had been placed on the check. Berlinger contacted Mr. and Mrs. Mizaur, informed them that "we have a bad check," and "[t]hey said that they would make it good." Plaintiff has never received any payment on said account.

On cross-examination, Mr. Berlinger testified that he had never met David Mizaur, did not know his voice, and that the man on the telephone had indicated he was Mr. Mizaur. Mr. Berlinger agreed it was possible that he had spoken with some other employee of Beef's Finest, Inc.

David Mizaur was called as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60), and testified as follows: He was the president and sole shareholder of Beef's Finest, Inc. Beef's Finest was incorporated in January 1974 with an initial capital investment of $5000 to $10,000. He did not know how much or what type of stock had been issued. He had no recollection of any directors' or shareholder's meetings, and did not know the whereabouts of the corporate minute books. He testified that Beef's Finest had financial difficulty from the day it opened.

Beef's Finest was located at 9401 South Ashland, Chicago, Illinois and Finest Beef of Illinois, Inc., was located on 47th Street. The average monthly expenses of Beef's Finest were approximately $10,000, excluding the cost of credit meat purchases, although the expenses were less when the corporation was first organized. The average weekly or monthly sales do not appear in the record, although Mr. Mizaur testified that the best week in sales was $40,000 to $50,000.

Mizaur had established an internal procedure whereby every sale made by the corporation would be recorded by way of a sales slip, but he was unable to produce any sales slips for the period of November and December 1974, even though he had been ordered by the court to produce these slips. He explained that the corporate ledger, canceled checks, and sales slips for November and December 1974 were "with the Internal Revenue or with somebody." He had no copies of these records, nor did he request the return of the corporate records or request copies of the same from the Internal Revenue Service.

The corporation maintained a bank account at Ashland State Bank. Mr. Mizaur, Don Sheehy, and Donna Sheehy, Mr. Sheehy's daughter (age 18), were authorized signatories. Both Sheehys were employees of Beef's Finest. Donna Sheehy was given carte blanche by David Mizaur to sign his name on any and all corporate checks, even though she was an authorized signatory, but he explained that he allowed this practice because Donna had not been initially listed on the bank signature card. She signed approximately 100 to 200 checks with his name.

Finest Beef of Illinois, Inc., another corporation which Mizaur "owned," had "an intercompany exchange of both purchase and cash" with Beef's Finest, Inc. Mizaur said it was possible, but unlikely, that some of the sales money or checks received by Beef's Finest would be deposited in "another corporate account."

He denied having prepared or having authorized someone to prepare the credit application submitted to Berlinger. When asked if his signature appeared on the credit application, Mizaur testified, "I am not sure. I can't testify to that. It is not mine, though."

Mizaur further testified that he never spoke to Mr. Berlinger or any

employee of Berlinger's, Inc., and never authorized anyone to call them and use his name. He was not aware of dealings with Berlinger's, Inc. He denied signing the check issued to Berlinger's, Inc., and said he knew nothing about the check or the stop payment order until sometime later when Donna Sheehy told him she had stopped payment due to an accounting error and discovery of inadequate funds. He was not closely involved with the business in November and December 1974 as he was engaged in other matters.

He failed to contact Mr. Berlinger to attempt to explain or rectify the stop payment order. According to Mizaur, all monies were used to pay bills when the corporation ceased operation in late December 1974, and there was no inventory remaining, even though the corporation had purchased approximately $68,000 worth of meat a month earlier. When asked if he had made substantial purchases from other meat purveyors during November and December 1974, he admitted having made purchases, but could not recall the amounts purchased or when such purchases were made. He was further asked if he sold $12,000 worth of meat to Pete's Meats in November 1974 below the prevailing market price at that time, and Mizaur responded that he could not recall making any such transaction.

Lastly, he testified that Don Sheehy owned 50 percent of the corporation pursuant to an unwritten agreement; that Don and Donna ran the operations, and that he trusted them implicitly.

The plaintiff rested and the defense counsel moved for a judgment in favor of David and Linda Mizaur. The court denied the motion and found that the corporation was created for the purpose of getting goods from another person without paying for them.

In the defendant's case in chief, David Mizaur testified as follows: Fischer & Fischer, attorneys at law, prepared minutes of meetings. He signed the minutes, but no longer had the books. He and Don Sheehy started the business, each of them contributing an initial $5,000 capital investment. Mizaur drew $200 a week from the corporation and Don Sheehy received $250 as a weekly salary (after taxes, Sheehy's weekly earnings were approximately $200). Mizaur primarily ran the operations on 47th Street, while Don Sheehy ran the operations for Beef's Finest and handled purchasing for Beef's Finest. Mizaur lost his entire investment in the company which consisted of his initial $5000 investment, a $14,000 loan to the corporation, and a $15,000 certificate of deposit which was used as security for a corporate loan. He did not take any money from the corporation and used the proceeds of the sales of meat to pay bills.

Defendants' motion was renewed at the close of their case. Linda Mizaur was dismissed from the suit. The motion was denied. The court entered judgment against the defendants Beef's Finest, Inc., and David

Mizaur in the amount of $67,825.57, and found that there was actual identity of the corporation and the shareholder, and that the shareholder was negligent in the operation of the corporation. David Mizaur appeals.

Regarding the first and second issues, defendant contends that plaintiff failed to prove identity of interest between David Mizaur and Beef's Finest, Inc., fraud, and injustice which must be established in order to pierce the corporate veil; and that plaintiff failed to show that Mizaur, as president of the corporation, personally participated in the perpetration of a fraud, and, thus, he is not personally liable even if other officers or agents of the corporation perpetrated a fraud on the plaintiff.

The plaintiff contends that it proved sufficient facts in order to pierce the corporate veil, particularly in light of Mizaur's failure to produce corporate records for November and December 1974 which created an unfavorable evidentiary presumption against the defendant; further, plaintiff posits that a corporate officer and shareholder can be liable for the fraud of other officers or agents of the corporation when he, with knowledge or recklessly without it, participates or assists in the fraud, and plaintiff argues that it has shown reckless conduct on Mizaur's part. Accordingly, plaintiff contends that defendant Mizaur must be considered an active participant in the fraud which was designed to induce plaintiff to deliver meat, and, therefore, he must be held personally liable. Additionally, plaintiff argues that Mizaur can be held personally liable by reason of his negligent conduct.

■■ It is clear that a corporation is an entity separate and distinct from its shareholders (*Loy v. Booth* (1974), 16 Ill. App. 3d 1077, 1080, 307 N.E.2d 414, 416), and that this theory provides the traditional basis for the concept of limited liability. (H. Henn, Handbook of the Law of Corporations and Other Business Enterprises §146, at 251 (2d ed. 1970).) It is also well settled that when the entity theory is urged to an intent not within its reason and purpose, it should be disregarded and the corporation considered as an aggregate of persons both in equity and at law. (*Shamrock Oil & Gas Co. v. Ethridge* (D. Colo. 1958), 159 F. Supp. 693, 696.) This doctrine traditionally is known as "piercing the corporate veil."

■■ Some element of unfairness, something akin to fraud or deception, or the existence of a compelling public interest must be present in order to disregard or pierce the corporate veil. (*American Trading & Production Corp. v. Fischbach & Moore, Inc.* (N.D. Ill. 1970), 311 F. Supp. 412, 416; *Bevelheimer v. Gierach* (1975), 33 Ill. App. 3d 988, 993, 339 N.E.2d 299, 303.) Also, undercapitalization is to be considered. (*Gowdy v. Richter* (1974), 20 Ill. App. 3d 514, 528, 314 N.E.2d 549, 560.) The doctrine is particularly applicable when the corporation is merely the alter ego or business conduit of its governing or dominating personality.

(*Shamrock*, at 696.) In summarization, the corporate veil will be pierced when the existence between the director or officer and the corporation has attained such unity of interest that the separateness of the individual and corporation has ceased to exist, and the facts are such that an adherence to the fiction of separate existence of the corporation would sanction a fraud or promote injustice. *People ex rel. Scott v. Pintozzi* (1971), 50 Ill. 2d 115, 128-29, 277 N.E.2d 844, 851-52; *Gowdy*, at 528.

■■ After reviewing the record, we find that sufficient facts were established at trial to bring this case within the exception to the general rule. The defendant, David Mizaur, was the sole shareholder and president of the corporation and virtually had complete management and control of the corporation. It is apparent that no directors' or shareholder's meetings were held in disregard of corporate separateness. Mizaur failed to produce the corporation's minute books. Moreover, Mizaur's investment in the corporation, an initial $5000 with a later advance of $14,000 and a $15,000 certificate of deposit as collateral for a corporate loan, appears to be inadequate in light of the corporation's average monthly expenses of $10,000 plus the purchases of meat.

■■■ Mizaur testified that all meats purchased had been sold by the end of December 1974, but he failed to produce sales slips for the meat sold during November and December 1974. Mizaur had established the sales slip system. Defendant Mizaur further testified that the proceeds from the sales were used to pay bills, but he could produce no documents to support his statements.

An unfavorable evidentiary presumption arises if a party, without reasonable excuse, fails to produce evidence which is under his control. (*Dollison v. Chicago, Rock Island & Pacific R.R. Co.* (1976), 42 Ill. App. 3d 267, 277, 355 N.E.2d 588, 596; *Dishinger v. Bon Air Catering, Inc.* (1949), 336 Ill. App. 557, 563-64, 84 N.E.2d 562, 565.) The defendant submits that these cases are inapplicable because Beef's Finest's records were not under his control. Even though the records were physically with the Internal Revenue Service, defendant Mizaur had the right to request a return of the records or to request copies of the records which he did not do. In effect, the records were still under his control as he had the right to request their return. He failed to offer any other legitimate excuse as to why he could not produce the records. Moreover, he was given an ample amount of time to produce these records. We believe that the trial judge reasonably inferred that any records relating to the sales of meat and payment of bills during November and December 1974 would adversely affect Mizaur's interest. *Dollison*, at 277; *Bubrick v. Northern Illinois Gas Co.* (1970), 130 Ill. App. 2d 99, 264 N.E.2d 560.

■■ The record also indicates that Mizaur gave Donna Sheehy, age 18, carte blanche to sign any checks, in any amount, using his name, even

though she was an authorized signatory on the corporate checking account. Mizaur, or someone from the corporation claiming to be Mizaur, induced plaintiff to deliver more meat on credit, representing that a check would be delivered upon the next delivery of meat. A check was delivered, signed either by Donna or Mizaur, which was subsequently stopped. Mizaur did not notify plaintiff of the stop payment and made no attempt to explain or rectify the stop payment order, and when plaintiff called him, he said the check would be paid. Mizaur now explains that the stop payment was issued by Donna due to an accounting error which resulted in insufficient funds in the corporate account, but he had produced no records to substantiate this fact. When all of these facts and the inferences to be drawn from these facts are considered as a whole, this court would be sanctioning a fraud or promoting injustice if David Mizaur was not held personally liable for the corporation's obligation to the plaintiff. The trial court did not err in imposing personal liability on David Mizaur and in finding that this was a proper case to pierce the corporate veil, and did not err in denying Mizaur's motion for judgment in his favor. We need not discuss the other points made with respect to the first two issues raised herein, as our discussion above is dispositive of these issues.

Regarding the third issue presented for review, the trial court held that the complaint stated a cause of action, and we affirm its findings.

■■ Finally, the trial court did not err in admitting the application for credit as a business record pursuant to Supreme Court Rule 236 (Ill. Rev. Stat. 1975, ch. 110A, par. 236), as the application was made as a record of an act, transaction, occurrence, or event made in the regular course of business and it was the regular course of business to make such a record at the time of such act, transaction, occurrence, or event.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI and DIERINGER, JJ., concur.