# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 02-4079 & 02-4188

INTERNATIONAL FINANCIAL SERVICES CORPORATION,
an Illinois corporation,

*Plaintiff-Appellee,*
*Cross-Appellant,*

v.

CHROMAS TECHNOLOGIES CANADA, INC.,
a Canadian Corporation,

*Defendant-Appellant,*
*Cross-Appellee,*

and

DIDDE CORPORATION, et al.,

*Defendants,*
*Cross-Appellees.*

_____

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 6433—**David H. Coar**, *Judge.*

_____

ARGUED SEPTEMBER 26, 2003—DECIDED JANUARY 23, 2004

_____

Before FLAUM, *Chief Judge*, and BAUER and MANION,
*Circuit Judges.*

MANION, *Circuit Judge.* The International Financial Services Corporation (International) finances printing presses. It sued various defendants for breach of a contract to produce a printing press and for fraud. A jury found that defendant Chromas Technologies Canada, Incorporated (Chromas), was the alter ego of defendant Didde Web Press Corporation (Didde Web Press), that Chromas was liable for breach of contract, and that Chromas was not liable for fraud. The district court then entered judgment against Chromas in the amount of $1,099,277.38. Chromas appeals on the grounds that the district court, and not the jury, should have decided whether to pierce the corporate veil under an alter ego theory and that the damage award was irrationally high. We vacate the judgment and remand so that the district court may determine whether to disregard the corporate entity and so that it may reconsider the amount of the judgment.

## I.

International finances printing presses for small to medium-sized businesses. Over the years, International has financed many presses, including the Aquaflex, Webtron, and Zig Zag brand names. Although the companies that made these presses had been independent competitors, by 1998 they were all owned by one company, the Didde Corporation.

In its complaint, International alleged that it advanced $949,649.60 for a printing press that was never built and that, from September 1999 through February 2000, it was misled into making payments to Didde Web Press, a manufacturer of printing presses that was well on its way to bankruptcy. All along, International thought it was really doing business with Chromas, an entirely different manufacturer. Didde Web Press and Chromas were not strangers. Both were then owned by the Didde Corporation. International sued Chromas and Didde Web Press in the district

court for breach of contract and fraud, claiming $949,649.60 in damages, and it also brought action against various other defendants. To succeed in its claim against Chromas, International had to show that the separate corporate status between Chromas and Didde Web Press was invalid.

The district court heard the case under its diversity jurisdiction and applied the substantive law of Illinois. Overruling the objection of Chromas's counsel, the district court submitted to the jury the issue of whether the corporate veil should be pierced. The jury found that (1) the corporate veil should be pierced because Chromas was the alter ego of Didde Web Press, (2) Chromas was liable for breach of contract, and (3) Chromas was not liable for fraud. The jury awarded International $1,099,277.38 plus "documented incurred legal fees," which accounted for the monetary award that exceeded by $149,627.78 the amount that International actually claimed in damages. International, moreover, had not requested attorneys' fees. The district court then entered judgment against Chromas for $1,099,277.38 and, despite Chromas's motion under Fed. R. Civ. P. 59 to adjust the award to no more than International had claimed in damages, later refused to alter that judgment.

Because the only other remaining defendants were in bankruptcy proceedings, the district court concluded that there was no just reason to delay the appeal of that judgment, and it certified the judgment against Chromas for interlocutory appeal under Fed. R. Civ. P. 54(b). Chromas then filed this appeal, arguing that the issue of whether to pierce the corporate veil should not have been submitted to the jury, that there must be a new trial on the issue of damages because the jury's award was excessive, and that this court should enter summary judgment in its favor. International cross-appeals, requesting that, if this court were to remand for a new trial on the claim for breach of contract, we also would require a new trial on the claim for fraud.

## II.

We turn first to the question of whether International had a right to a jury trial on the issue of piercing the corporate veil. Our review of this issue of law is plenary, as is our review of any issue of law. *E.g.*, *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 749-50 (7th Cir. 1993). Even where, as here, a district court is applying the substantive law of a state, federal procedural law controls the question of whether there is a right to a jury trial. *Simler v. Conner*, 372 U.S. 221, 222 (1963). Under Fed. R. Civ. P. 38(a), there is a right to a jury trial where either the Seventh Amendment or an ordinary statute of the United States so requires. Because International relies on no ordinary statute to support its assertion that it was entitled to a jury trial, its claimed right to a jury trial depended upon the Seventh Amendment. The Seventh Amendment limits the right to a jury trial to "[s]uits at common law, where the value in controversy shall exceed twenty dollars." It is therefore clear, and the parties do not dispute, that International was entitled to demand a jury trial on its breach of contract claim: on that claim, International sought money damages, and such a claim would have been brought as a suit at common law. *See, e.g.*, *Senn v. United Dominion Indus., Inc.*, 951 F.2d 806, 814 (7th Cir. 1992).

That observation, however, is not determinative of this appeal. Even when a plaintiff is entitled to a jury trial on his legal claims, the district court must nonetheless make an independent judgment as to any equitable issue. *Davenport v. DeRobertis*, 844 F.2d 1310, 1314 (7th Cir. 1988) (stating that "the district judge must make an independent judgment on equitable issues insofar as they are not identical to the legal issues" that the jury decided); *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1443 (10th Cir. 1988) (stating that, where both equitable and legal issues are present, "trial is both to the jury and to the court"); *see also Smith-Haynie v. District of Columbia*, 155 F.3d 575,

578 (D.C. Cir. 1998) (stating that, "[g]enerally speaking, questions sounding in equity are for a judge to decide"). This proposition is true even though the jury's determination of factual issues common to both the legal and equitable claims would bind the court. *See Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417, 1421 (7th Cir. 1986). The dispositive question, therefore, is whether piercing the corporate veil under the law of Illinois is, according to federal procedural law, a form of equitable relief. *See GFTM, L.L.C. v. TKN Sales, Inc.*, 257 F.3d 235, 238-39 (2d Cir. 2001) (stating that the right to a jury trial in federal court hinges on federal procedural law); 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2303 (1995 & Supp. 2003).

When deciding whether a remedy is equitable or legal, we engage in a two-pronged analysis. First, we must "compare the . . . action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Tull v. United States*, 481 U.S. 412, 417-18 (1987). The latter inquiry is more important than the former. *Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 42 (1989); *Lebow v. American Trans Air, Inc.*, 86 F.3d 661, 668 (7th Cir. 1996). At first blush, it is not clear that the initial prong of inquiry, asking whether piercing the corporate veil is comparable to an 18th century *action* brought in the courts of England in law or in equity, is relevant. Piercing the corporate veil, after all, is not itself an action; it is merely a procedural means of allowing liability on a substantive claim, here breach of contract. *Central States, SE and SW Areas Pen. Fund v. Brumm*, 264 F. Supp. 2d 697, 700 n.3 (N.D. Ill. 2003); 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 41.28 (1999 & Supp. 2003) (hereinafter 1 Fletcher). Nonetheless, in these circumstances we must ask "whether a modern legal right has a sufficient

analogy to a right enforced by common law courts in the eighteenth century." *Marseilles Hydro Power v. Marseilles Land & Water*, 299 F.3d 643, 649 (7th Cir. 2002) (emphasis in original omitted).

Here, such an inquiry is inconclusive: as the Second Circuit has explained in detail, the doctrine of piercing the corporate veil has roots in both courts of law and equity. *See Wm. Passalacqua Builders v. Resnick Developers*, 933 F.2d 131, 135-36 (2d Cir. 1991). This conclusion is unsurprising, because most traditional issues have roots in both courts of law and equity. *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 745 (D.C. Cir. 1995). As the historical inquiry is indeterminate, the outcome of this appeal hinges on the second half of our analysis, whether piercing the corporate veil under Illinois law is legal or equitable in nature.

When considering whether a remedy is equitable or legal, we look to the nature of the relief. *State Farm Mut. Auto Ins. Co. v. Mossey*, 195 F.2d 56, 60 (7th Cir. 1952). Unfortunately, there is no cut-and-dried rule that allows a court to determine whether a remedy is legal or equitable in nature. *See* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2302. It is possible, nonetheless, to draw general distinctions between the two forms of relief. Legal remedies traditionally involve money damages. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002); *Pane v. RCA Corp.*, 868 F.2d 631, 636 (3d Cir. 1989) . Equitable remedies, by contrast, are typically coercive, and are enforceable directly on the person or thing to which they are directed. *See id.*; 1 Dan B. Dobbs, *Law of Remedies* § 1.2 (1993). Traditionally, "equitable relief is discretionary," whereas legal relief is not. *Id.* Typical examples of equitable relief include an accounting or an injunction. *Jefferson Nat'l Bank v. Central Nat'l Bank in Chicago*, 700 F.2d 1143, 1150 (7th Cir. 1983). With those distinctions in mind, we examine the remedy of piercing the corporate veil on an alter ego theory under the law of Illinois.

Under the law of Illinois, a party seeking to disregard the corporate entity because the targeted corporation is merely the alter ego of the dominating personality "must show that (1) there is such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances are such that adhering to the fiction of a separate corporate existence would promote *injustice or inequity.*" *Melko v. Dionisio*, 580 N.E.2d 586, 594 (Ill. Ct. App. 1991) (emphasis added). Whether to pierce the corporate veil is a matter of the trial court's discretion. *See Crum v. Krol*, 425 N.E.2d 1081, 1089 (Ill. Ct. App. 1981) (holding that "the trial court did not abuse its discretion in allowing Crum and Thomas Crum & Associates to be treated as a single entity").

Under Illinois law, piercing of the corporate veil on an alter ego theory is available only where failing to provide such relief would promote injustice or inequity. It follows that veil-piercing must be an exercise of equitable power. It is also significant that veil-piercing under Illinois law is a matter of discretion, not of right, and that the remedy of piercing the corporate veil does not itself result in money damages. Each of those observations militates toward the conclusion that veil-piercing is an equitable power. At least within the context of Illinois law, "[s]ince the doctrine of piercing the corporate veil is an equitable one that is particularly within the province of the trial court, the right to a jury trial on the issue of piercing the corporate veil does not exist." 1 Fletcher, § 41.29; *see also Bangor Punta Operations v. Bangor & A.R. Co.*, 417 U.S. 703, 713 (1974) (stating that "courts of equity" decide whether to pierce the corporate veil); *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1345 (7th Cir. 1987) (stating that "disregard of the corporate entity is essentially an equitable doctrine"); *In re Air Crash Disaster*, 720 F. Supp. 1467, 1484 (D. Colo. 1989) (stating that "the ultimate decision of whether to disregard the corporate form . . . lies

in equity"); *United States v. Golden Acres, Inc.*, 684 F. Supp. 96, 103 (D. Del. 1988) (concluding that, under the law of Delaware, piercing the corporate veil is equitable relief for which a federal jury trial is unavailable).

Although we conclude that, under Illinois law, piercing the corporate veil is an equitable remedy to be determined by the court, this conclusion might not be reached under the law of another state. International cites *Wm. Passalacqua Builders v. Resnick Developers*, in which the Second Circuit, applying the law of New York, held that the issue of whether to pierce the corporate veil was properly submitted to the jury. 933 F.2d at 136. Because the law regarding piercing the corporate veil varies from state to state, *United States v. Pisani*, 646 F.2d 83, 87 (3d Cir. 1981), the Second Circuit's application of New York law does not strictly apply here.

Although obviously not precedential, *Wm. Passalacqua Builders* has similarities to the case at hand. As stated above, we agree with our colleagues in the Second Circuit that the doctrine of piercing the corporate veil has roots in both law and equity. But we take issue with the conclusion that, because a plaintiff pursues a legal remedy (a money judgment), he is entitled to a jury trial not only on the merits but also on whether the corporate entity should disregarded. A jury trial does not have to include all or nothing. *See ABM Marking, Inc. v. Zanasi Fratelli*, S.R.I. ___ F.3d ___, 2003 WL 22999282, at *2 (7th Cir. Dec. 23, 2003) (noting that, "[i]n the second trial, the issue of accounting was severed from the other issues considered by the jury").

It is certainly possible for a district court both to allow a jury trial on the substantive legal issues and to decide independently the equitable question of whether to disregard the corporate entity. For example, a district court could entertain, under Fed. R. Civ. P. 69(a), a post-judg-

ment motion to pierce the corporate veil. *See Aioi Seiki, Inc. v. JIT Automation, Inc.*, 11 F. Supp. 2d 950, 954 (E.D. Mich. 1998); *MCI Telecomms. v. O'Brien Mktg., Inc.*, 913 F. Supp. 1536, 1539-44 (S.D. Fla. 1995); *Flip Side Prods. v. J.A.M. Prods., Ltd.*, 125 F.R.D. 144, 146 (N.D. Ill. 1989); 4 Robert L. Haig, *Business and Commercial Litigation* § 51.2 (1998 & Supp. 2002). A district court could also treat the jury's ultimate decision regarding whether to pierce the corporate veil as advisory[1] and then decide, in the exercise of its equitable powers, whether veil-piercing would be appropriate.[2] 11 Charles A. Wright, et al., *Federal Practice and Procedure* § 2887 (1995 & Supp. 2003). Thus, contrary to the Second Circuit's tacit assumption, a district court could both safeguard a plaintiff's Seventh Amendment right to a jury trial on legal claims for money damages and separately decide, in the exercise of its equitable powers, whether to pierce the corporate veil.

---

[1] However, as noted above, if the jury resolved an issue of fact that was the same for both the legal and equitable issue, that factual finding would be binding on the court.

[2] International argues in the alternative that the district court actually did treat the jury's findings as advisory. After Chromas objected to sending the issue of veil-piercing to the jury, the district court stated that "[a]lternatively, I'll send it to the jury for an advisory verdict." Had the district court followed through on this promise, there would have been no error. But International does not point to a part of the record showing that the district court ever explicitly adopted the jury's findings, or that the district court ever explained its thought process as to why it agreed with the jury that piercing the corporate veil was appropriate. It is therefore impossible for us to ascertain the district court's "chain of reasoning," and we must reverse and remand for further proceedings. *Mautz & Oren v. Teamsters Local No. 279*, 882 F.2d 1117, 1125 (7th Cir. 1989).

As the *Wm. Passalacqua* court noted, determinations of fact are important in deciding whether to disregard the corporate entity. Under Illinois law, as mentioned above, determining whether there is such a "unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" is essentially a question of fact. Deciding this question of fact depends on whether there was inadequate capitalization, a failure to observe corporate formalities, commingling of funds, an absence of corporate records, etc., *Melko*, 580 N.E.2d. at 595, and a jury is arguably capable of resolving such issues. However, the balance of the veil-piercing analysis— deciding whether adhering to the fiction of a separate corporate existence would promote injustice or inequity—is the type of equitable determination that a jury is not to decide. We therefore conclude that, although the doctrine of piercing the corporate veil under Illinois law involves important findings of fact, it is still, as we said in *Koch Refining*, 831 F.2d at 1345, "essentially an equitable doctrine" and therefore is not amenable to determination by a jury.

We must also deal with a case that neither party cited, *FMC Fin. Corp. v. Murphree*, 632 F.2d 413 (5th Cir. 1980), that addresses precisely the issue before us. In *FMC*, the Fifth Circuit held, in a diversity case applying the law of Illinois, that the issue of piercing the corporate veil is a matter for the jury to decide. *Id.* at 421 n.5. The Fifth Circuit reached this conclusion without analysis, relying mainly on two cases holding that, under other states' laws, a jury could decide whether to disregard the corporate entity. *Id.* Specifically, the Fifth Circuit relied on *Delchamps, Inc. v. Borkin*, 429 F.2d 417 (5th Cir. 1970), a per curiam opinion in which the court, without citation to any supporting authority, held that, in light of the facts presented, the veil-piercing issue was properly before the jury. *Id.* at 419. Also, the court cited *Continental Cas. Co. v. United States*, 308 F.2d 846 (5th Cir. 1962), in which the

court held, again without citing any supporting authority, that it was proper for a jury to decide whether to disregard the corporate entity. *Id.* at 848.[3] Thus, although *FMC Fin. Corp.* is on point, its holding is not supported by analysis or appropriate authority. We do not find that opinion persuasive and decline to follow it.[4]

We conclude that, because piercing the corporate veil under Illinois law is, according to federal procedural law, an equitable doctrine, International was not entitled to a jury trial on that issue. Insofar as the jury provided the equitable relief of piercing the corporate veil, that relief was invalid as a matter of law. *Dombeck v. Milwaukee Valve Co.*, 40 F.3d 230, 236-37 (7th Cir. 1994) (holding that the jury's decision to provide an injunction was invalid as a matter of law). Because it is not apparent that the decision to disregard the corporate entity was the only reasonable conclusion under the circumstances, we must therefore remand this case to the district court to resolve whether the corporate entity should be disregarded. *See id.* at 237.

We next consider Chromas's contention that the jury award was excessive and that a new trial on the issue of

---

[3] The Fifth Circuit also cited *Byrd v. Blue Ridge R.E.C., Inc.*, 356 U.S. 525 (1958), for the proposition that federal policy favors jury decisions of disputed fact in diversity cases and *Berlinger's, Inc. v. Beef's Finest, Inc.*, 372 N.E.2d 1043 (Ill. Ct. App. 1978), for the proposition that, when the corporate entity is disregarded, the court is left with an aggregate person in both law and equity. *FMC Fin. Corp.*, 632 F.2d at 421 n.5. We have no quarrel with either of those ideas, but neither is dispositive of, or even particularly helpful in deciding, whether piercing the corporate veil under Illinois law is an equitable remedy.

[4] Because this opinion creates a split between circuits, we circulated it in advance of publication to the judges of the court in regular active service, pursuant to Seventh Circuit Rule 40(e). No judge voted to hear the case en banc.

damages is in order. As noted above, the jury awarded International $1,099,277.38 in damages on the claim for breach of contract. This award was $149,627.78 more than the $949,649.60 International actually claimed it had suffered in damages. Pursuant to Fed. R. Civ. P. 59, Chromas timely moved for the district court to reduce the damages award, but the district court denied the motion, without comment, in a minute order.

Federal courts sitting in diversity jurisdiction must apply a federal standard when determining whether a jury verdict is excessive. *Pincus v. Pabst Brewing, Co.*, 893 F.2d 1544, 1554 (7th Cir. 1990). Under that standard, where an award is not rationally connected to the evidence, both the district court and this court have the authority (1) to order a remittitur, if the plaintiff is willing to accept that remedy, or (2) to order a new trial limited to damages, if the plaintiff is not willing to accept a remittitur. *See id.* at 1556. Because International has eschewed any interest in the latter option, we would simply order a remittitur if we were to find the damages award to be excessive.

This is one of the rare instances in which we can determine that the award of damages has no rational basis in the evidence presented. International only claimed that Chromas had caused it $949,649.60 in damages by breaching its contract. It was therefore irrational for the jury to have awarded more than $949,649.60 on the claim for breach of contract. Thus, assuming that the district court decides to pierce the corporate veil on remand, it must then enter an award of damages in the amount of $949,649.60.

Chromas's next argument is that we should enter summary judgment in its favor. "Federal Courts of Appeals have the authority under 28 U.S.C. § 2106 to provide that relief when so doing would be just under the circumstances." *Turner v. J.V.D.B. Assocs., Inc.*, 330 F.3d 991, 998 (7th Cir. 2003) (internal quotation omitted). "In most

instances, however, such a decision is best made by the district court; we would rarely find it appropriate to direct the entry of summary judgment." *Id.* This case is no exception to the rule. Whether veil-piercing is appropriate depends on a host of considerations that this court is ill-positioned to weigh as a matter of first impression.

Finally, we consider International's cross-appeal, in which it argues that, if this court were to order a new trial on the claim for breach of contract, the claim for fraud should also be tried anew. Because we do not remand this case for a new trial on the claim for breach of contract, we deny International's requested relief as moot.

### III.

Chromas can be liable only if the corporate veil is pierced. Whether to pierce the corporate veil under Illinois law is, according to federal procedural law, a question of equity. Therefore, International had no Seventh Amendment right to a jury trial on that question. We thus vacate the judgment against Chromas and remand this case for a determination of whether to pierce the corporate veil. If the district court decides to disregard the corporate form, it must then enter an award of damages in the amount of $949,649.60.

A true Copy:
    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*