CLIMATROL INDUSTRIES, INC., *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. FEDDERS CORPORATION, Defendant-Appellee and Cross-Appellant.

First District (3rd Division)   No. 85—3663

Opinion filed November 19, 1986.

Roger W. Wenthe and Mark E. Shure, both of McDermott, Will & Emery, of Chicago, for appellants.

George L. Siegel, Rosemarie J. Guadnolo, and Steven R. Greenberger, all of Arvey, Hodes, Costello & Burman, of Chicago, for appellee.

JUSTICE WHITE delivered the opinion of the court:

Plaintiffs, Climatrol Industries, Inc., and Worthington Corporation, in their action for declaratory judgment, ask the court to inter-

pret the contract under which they sold factories to defendant, Fedders Corporation. Climatrol and Worthington sought a judgment declaring that Fedders is responsible for the defense of certain product liability suits brought against them. The trial court granted Fedders' motion for summary judgment, and plaintiffs appeal.

Before 1970, Climatrol was a manufacturer of air conditioners and furnaces; Worthington owned all shares of Climatrol. On December 1, 1970, Climatrol and Worthington sold Fedders substantially all of Climatrol's assets and all of Worthington's assets which were related to the manufacture of air conditioners and heaters.

A fire damaged property belonging to John and Connie Trezesniewski, and their insurer, Travelers Indemnity Corporation, paid their claim. In October 1981, Travelers, as subrogee for the Trezesniewskis, brought suit against Worthington and Honeywell Corporation. Travelers alleged that the Trezesniewski's fire was caused by either a defective furnace regulator valve that Honeywell manufactured or a defective furnace that Worthington manufactured in 1964 at a plant which was sold to Fedders in 1970. On February 25, 1982, Worthington tendered defense of the suit to Fedders. On March 30, 1982, Worthington and Climatrol tendered defense of three more product liability suits to Fedders. All of the suits involved products sold before December 1, 1970; all of the products were manufactured at plants which were sold to Fedders. Fedders rejected the tenders of defense for all four suits.

Climatrol and Worthington began the instant action, seeking a judicial declaration that Fedders was obligated under the sales agreement to assume defense of those four suits and any similar product liability suits brought against Climatrol or Worthington in the future. Fedders moved to dismiss the complaint on the grounds that neither plaintiff was entitled to maintain an action in Illinois courts. The trial court denied the motion. Plaintiffs and defendant then filed cross-motions for summary judgment. The parties agreed that the outcome of the case depended solely upon the interpretation of the sales agreement. The trial court held that under the terms of the agreement, Fedders did not assume responsibility for the defense of the product liability suits involved in this case. Worthington and Climatrol appeal from the order granting Fedders' motion for summary judgment, and Fedders cross-appeals from the trial court order denying its motion to dismiss.

In the sales agreement Fedders agreed to assume Climatrol's liabilities "to the extent that the same are 'Disclosed Liabilities,'" but the parties further agreed "that Fedders assumes no liability *** of

any kind or nature whatsoever except as expressly provided in this Agreement ***." The parties stated:

"For the purposes of this Agreement, the term 'Disclosed Liabilities' as used herein means the aggregate of the liabilities or obligations of Corporations of any nature whether accrued, absolute, contingent or otherwise, which exist on the Closing Date and are *** (iii) those existing on the Latest Balance Sheet Date which are not included or reserved for on such Latest Balance Sheet in accordance with generally accepted accounting principles and practices and which are not required to be disclosed in this Agreement or the Lists, Documents or Exhibits delivered hereunder ***."

The agreement unambiguously states that defendant assumed only those liabilities which existed on the closing date. Plaintiffs contend that the claims at issue in this case were existing, contingent liabilities on December 1, 1970. They rely on the definition of "contingency" given in Accounting Research Bulletin, No. 50:

"In accounting a contingency is an existing condition, situation or set of circumstances, involving a considerable degree of uncertainty, which may, through a related future event, result in the acquisition or loss of an asset, or the incurrence or avoidance of a liability, usually with the concurrence of a gain or loss. A commitment which is not dependent upon some significant intervening factor or decision should not be described as a contingency." (Financial Accounting Standards Board, Accounting Standards 88 (1973).)

Plaintiffs argue that this definition establishes that any product is a contingent liability once it is sold. They maintain that here, "[t]he claims center around products which were already *in existence* in 1970, and through the related future events of consumer injury, Climatrol and Worthington could possibly incur a liability *** arising out of the existence of those products. Thus, these claims fit the definition of contingency as it existed in accounting practice in 1970." (Emphasis in original.) Following plaintiffs' logic there would be no limitation on the "existing condition" or on the "related future event" which, when combined, would create liability. Under this definition defendant assumed unlimited liabilities, despite its clear intention to assume only specifically disclosed liabilities.

The accounting definition of "contingency" does not purport to establish when a contingent liability comes into existence. Moreover, the parties adopted accounting principles only to determine which liabilities needed to be included on the balance sheet; they did not adopt

an accounting definition of "contingent liability." Even if we were to accept *arguendo* the definition of contingency proffered by plaintiffs, the question would remain whether an existing defective product standing alone constitutes in and of itself a liability of any kind.

Other courts have sharply distinguished between "contingencies" and "contingent liabilities":

> "A contingent liability is one thing, a contingency the happening of which may bring into existence a liability is another, and a very different thing. In the former case there is a liability which will become absolute upon the happening of a certain event. In the latter there is none until the event happens. The difference is simply that which exists between a conditional debt or liability and none at all." (*Montgomery v. Phillips Petroleum Co.* (Tex. Civ. App. 1932), 49 S.W.2d 967, 973, quoting *Fernald v. Johnson* (1880), 71 Me. 437, 440.)

(See also *Lewis v. Barnett* (1934), 139 Kan. 821, 827, 33 P.2d 331, 334.) We believe that this distinction is applicable to the circumstances presented in this case. As of December 1, 1970, there was no liability at all for the product liability suits at issue herein, because no injury had occurred. Therefore, these suits are not amongst the "liabilities *** whether accrued, absolute, contingent or otherwise, which exist[ed] on the Closing Date," which defendant expressly assumed.

In *Grant-Howard Associates v. General Housewares Corp.* (1984), 63 N.Y.2d 291, 472 N.E.2d 1, 482 N.Y.S.2d 225, the plaintiff sold all of the assets of its subsidiary corporation to the defendant. The defendant contractually agreed to "assume *** all of the obligations and liabilities of [the subsidiary] which exist at the Closing Date." (62 N.Y.2d 291, 295, 472 N.E.2d 1, 2, 482 N.Y.S.2d 225, 226.) A third party subsequently claimed that she was injured by a defective product which the subsidiary sold prior to the closing date. The plaintiff argued that the allegedly defective product was an existing contingent liability on the closing date. The court held:

> "An uninjured party simply is not a "contingent liability" in the usual sense of that term (see, e.g., Black's Law Dictionary [5th ed.], p. 291 ["A potential liability; *e.g.* pending lawsuit"]). There is no liability or claim before injury occurs. Granted that "contingency" invokes uncertain events, the uncertainty should be restricted to the success of asserting an existing claim, rather than expanding it to include the altogether unpredictable event that an injury will occur. Were plaintiffs' position to be adopted, a purchaser would be unable to meaningfully limit its liability as every item ever sold by the predecessor would be a

potential source of assumed liability." (*Grant-Howard Associates v. General Housewares Corp.* (1984), 63 N.Y.2d 291, 298, 472 N.E.2d 1, 3-4, 482 N.Y.S.2d 225, 227-28.) We agree with this reasoning. We hold that under the express wording of the sales agreement, defendant did not assume liability for allegedly defective products which plaintiffs sold prior to the sales-agreement closing date, December 1, 1970. Accordingly, we affirm the trial court order granting defendant's motion for summary judgment. Because we affirm the trial court decision on plaintiffs' appeal, we need not address the issues raised in defendant's cross-appeal.

Affirmed.

RIZZI, P.J., and McNAMARA, J., concur.