**QUADION CORPORATION, a Minnesota corporation, Plaintiff,**

**v.**

**Delores H. MACHE, The John Mache Declaration of Trust, Dated August 1, 1973; John Doe and Mary Roe as Beneficiaries of The John Mache Declaration of Trust, The First National Bank of Des Plaines, as Trustee of The John Mache Declaration of Trust, NBD Park Ridge Bank as Trustee of The John Mache Declaration of Trust, and NBD Trust Company of Illinois, as Trustee of The John Mache Declaration of Trust, Defendants.**

**No. 89 C 3536.**

United States District Court, N.D. Illinois, E.D.

May 17, 1990.

Terence M. Heuel, Nicholas F. Esposito, Mark A. Schram, Esposito & Heuel, Chicago, Ill., for plaintiff.

Roseann Oliver, Jan Feldman, Allan T. Slagel, Phelan, Pope & John, Ltd., Chicago, Ill., Daniel J. Dowd, Dowd, Dowd & Mertes, Ltd., Des Plaines, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

After discovering that property which its subsidiary had purchased from Delores Mache and The John Mache Declaration of Trust was severely contaminated with deposits of polychlorinated biphenyl ("PCB"), Quadion Corporation ("Quadion") filed its complaint in this case. The First Amended Complaint (hereinafter "Complaint") alleges a violation of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA," the "Act," or "Superfund"), 42 U.S.C. § 9601 et seq. (Count I); the tort of nondisclosure of a latent defect (Count II); negligence (Count III); strict liability in tort (Count IV); breach of warranty or contract (Count V); breach of an indemnity agreement (Count VI); and a claim for certain equitable relief (Count VII). Ms. Mache, NBD Park Ridge Bank and NBD Trust Company filed a motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss all counts of the complaint, which was subsequently joined by The John Mache Declaration of Trust. For the reasons set forth herein, defendants' motion will be granted in part and denied in part.

## BACKGROUND FACTS

For purposes of this motion to dismiss, the court must accept all of the factual allegations of the complaint as true and construe those allegations in the light most favorable to the plaintiffs. So interpreted, the complaint portrays the following scenario of events:

Prior to July 6, 1978 a die-casting facility located in Addison, Illinois was owned by Delta Die Casting Company, Inc., a corpo-

ration organized under the laws of the State of Illinois. (Complaint, ¶ 6.) At this time defendant Delores H. Mache owned 30% of the shares of Delta Die Casting. The remaining 70% of the shares were owned by defendant The John Mache Declaration of Trust (the "Mache Trust"). The First National Bank of Des Plaines was the trustee of the Mache Trust as of and prior to July 6, 1978. The complaint alleges that defendants NBD Park Ridge Bank and NBD Trust Company of Illinois are the current successor trustees of the Mache Trust. (Complaint, ¶¶ 10–13.)

On or about July 6, 1978 Quadion's predecessor-in-interest[1] purchased all of the shares of Delta Die Casting from Ms. Mache and the Mache Trust. (Complaint, ¶ 9.) After acquiring the company, Quadion learned that the real property on which the die casting facility was located, including the soils, sub-soils and the building, "were severely contaminated with deposits of [polychlorinated biphenyl or 'PCB'] . . . ." (Complaint, ¶ 15.) Plaintiff's pleading alleges that while they were in possession of the die casting facility (the "facility"), defendants

> deposited and disposed of PCBs, and permitted said PCBs to accumulate and collect on and in the soil and sub-soil of the Property, and building, structures and improvements thereon or authorized, permitted or ratified said activities.

(Complaint, ¶ 18.)

By letter dated March 28, 1986 Quadion gave notice to the defendants of the PCB problem and offered the defendants the choice of either cleaning up the facility and surrounding property or reimbursing Quadion for the cost of so doing. Quadion notified defendants that since the sale of

the property was imminent, if no response was forthcoming Quadion would go forward with the cleanup and seek reimbursement from the defendants. (Complaint, ¶ 19.)

When in fact Quadion received no reply to its letter, it undertook the clean-up of the site. (Complaint, ¶ 20.) Between early April of 1986 and February 27, 1987 Quadion spent $214,125 on "response" activities. (Complaint, ¶ 23.)[2] Quadion sold the property to Metalmaster, Inc. on May 4, 1986. (Complaint, ¶ 22.)

On or about April 15, 1987 Quadion was notified by counsel for Metalmasters (or Ganton, Inc., its successor-in-interest) that additional PCB contamination had been discovered on the property. Since this discovery Quadion has incurred additional response costs investigating and disposing of the PCB contamination. Ganton, too, has expended funds for PCB cleanup: Ganton has now demanded that Quadion clean up the remaining PCB contamination or be subject to litigation. (Complaint, ¶¶ 27–31.)

Quadion has demanded reimbursement from the defendants for its initial response expenditures, and has notified it of the additional contamination discovered by Metalmasters and Ganton. (Complaint, ¶¶ 25, 28.) Quadion's demands for reimbursement from the defendants have been futile. (Complaint, ¶ 26.) Accordingly, Quadion filed its complaint in this case on April 28, 1989.

### DISCUSSION

#### A. *Count I: CERCLA*

■ Count I seeks contribution from Ms. Mache and the trustees pursuant to 42 U.S.C. § 9613(f)(1).[3] Under the statute

---

**1.** Unless further specificity is necessary to the court's discussion in this opinion, plaintiff Quadion, its subsidiaries and its predecessors in interest hereinafter will all be referred to as "Quadion."

**2.** "Response" costs are cleanup costs. *See Edward Hines Lumber Co. v. Vulcan Materials Co.,* 861 F.2d 155, 156 (7th Cir.1988), citing 42 U.S.C. § 9613(f)(1).

**3.** 42 U.S.C. § 9613(f)(1) provides, in pertinent part:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9607(a) of this title. Such claims . . . shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.

Quadion may seek such contribution only if the defendants are persons "who [are] liable or potentially liable" under the Act. · As the court has interpreted the pleadings, Count I seeks to hold each of the defendants liable as an owner or operator of a facility at which hazardous substances were disposed of pursuant to § 107(a)(2) of the Act, 42 U.S.C. § 9607(a)(2).[4] (*See* Complaint, ¶ 33.)[5]

The defendants have moved to dismiss Count I on the ground that it fails to allege any factual basis pursuant to which they could be found liable or potentially liable as owners or operators of a facility. More precisely, defendants argue: (1) that they do not fall within the owner category since they were merely shareholders of a corporation, and therefore not responsible for corporate Superfund liability; and (2) that the complaint fails to allege any facts whatsoever that would demonstrate that the defendants exercised the requisite degree of control over the facility such that they could be found to have been its operators. (*See* Defendants' Mem. in Support, pp. 3–6.) *Cf. Edward Hines Lumber Co., supra,* 861 F.2d at 156 (noting circularity of statutory definition of "owner or operator" under § 9601(20)(A)(ii) and holding that contractor who was neither independent contractor nor joint venturer could not be liable for contribution as an "operator" of a facility).

Defendants' motion to dismiss Count I must be denied. The complaint adequately sets forth sufficient facts pursuant to which the court could find that Delta Die Casting was a closely held company in that " 'one or a few persons hold substantially the entire ownership of it....' " *Aetna*

*Casualty and Surety Co. v. Kerr–McGee Chemical Corp.,* 875 F.2d 1252, 1258 (7th Cir.1989), *quoting* Restatement (2d) of Judgments, § 59 (1982). Defendants, too, have noted that until 1978 Delta Die Casting "was a family owned business purchased by John Mache." (Defendants' Mem. in Support, pp. 1–2.) Courts addressing the issue have determined that shareholders of a closely held corporation can, under certain circumstances, be held responsible for the corporation's Superfund liability even in the absence of facts which would warrant the piercing of the corporate veil. *See Kelley v. Thomas Solvent Co.,* 727 F.Supp. 1532, 1542–1545 (W.D. Mich.1989); *see also United States v. Mirabile,* 15 E.L.R. 20992, 1985 WL 97 (Sept. 4, 1985) (citing various cases in which it was held that individual shareholders who actively participated in the affairs of closely held corporations could be held responsible for Superfund liability). Judge Enslen of the United States District Court for the Western District of Michigan has articulated on various occasions the following test for when a shareholder of a closely held corporation can be found responsible for the Superfund liability of the corporation:

> The Court will look to evidence of an individual's authority to control, among other things, waste handling practices— evidence such as whether the individual holds the position of officer or director, especially where there is a co-existing management position; distribution of power within the corporation, including position in the corporate hierarchy and percentage of shares owned. Weighed

---

**4.** Section 107(a)(2) provides that "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of" can, subject to various defenses, be liable under the Act.

**5.** The court notes that the complaint asserts that plaintiffs are entitled to recovery of cleanup costs from the defendants pursuant to § 107(a)(4)(B) of the Act, 42 U.S.C. § 9607(a)(4)(B). (Complaint, ¶ 34.) This section of CERCLA pertains to the potential liability of any person who:

accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance....

Since neither plaintiff's pleading nor its memorandum on the motion to dismiss asserts that defendants accepted hazardous substances for transport to disposal facilities, the court has concluded that the citation is a typographical error. Quadion obviously seeks contribution from the defendants under an "owner or operator" theory of liability. 42 U.S.C. § 9607(a)(2).

along with the power factor will be evidence of responsibility undertaken for waste disposal practices, including evidence of responsibility undertaken and neglected, as well as affirmative attempts to prevent unlawful hazardous waste disposal. Besides responsibility neglected, it is important to look at the positive efforts of one who took clear measures to avoid or abate the hazardous waste damage. Therefore the Court will look to this evidence when determining liability by the "prevention" test.

*Kelley v. Thomas Solvent Co.,* 727 F.Supp. at 1543–44.

■ As Judge Enslen concluded, "[t]he test for liability of corporate individuals under CERCLA is thus heavily fact-specific, requiring an evaluation of the totality of the situation." 727 F.Supp. at 1544. The court does not believe, however, that federal pleading requirements compel the specification of such facts in the complaint. As the Seventh Circuit noted in *Aetna Casualty, supra:*

> "For the purpose of affording opportunity for a day in court on issues contested in litigation, however, there is no good reason why a closely held corporation and its owners should be ordinarily regarded as legally distinct. On the contrary, it may be presumed that their interests coincide and that one opportunity to litigate issues that concern them in common should sufficiently protect both."

*Aetna Casualty, supra,* 875 F.2d at 1259, *quoting* Restatement (2d) of Judgments § 59, comment e. Defendants' motion with regard to Count I, accordingly, must be denied.

B. *Count II: Failure to Disclose Latent Defect*

■ Defendants have moved to dismiss Count II (as well as Counts III and IV) on the basis that the allegations of the complaint fail to establish the requisite physical harm. Relying on the doctrine set forth by the Illinois Supreme Court in *Moorman Manufacturing Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982), defendants assert that Quadion

"has not, and cannot, allege that there has been any physical harm caused by PCBs on the Property." (Defendants' Reply Mem., p. 5.)

Defendants are mistaken. The Illinois Supreme Court recently examined at length the sufficiency of the negligence and strict liability counts contained in three complaints filed by certain Illinois school districts against various suppliers of materials containing asbestos. *Board of Education of the City of Chicago v. A, C and S, Inc.,* 131 Ill.2d 428, 137 Ill.Dec. 635, 546 N.E.2d 580 (1989). Defendants in *A, C and S* challenged these counts, as defendants in the instant case do, under the economic loss doctrine of *Moorman.* The Illinois Court held that, despite *Moorman,* plaintiffs had stated causes of action in tort:

> We conclude that it would be incongruous to argue that there is no damage to other property when a harmful element exists throughout a building or an area of a building which by law must be corrected and at trial may be proven to exist at unacceptably dangerous levels.

137 Ill.Dec. at 643, 546 N.E.2d at 588.

Such a conclusion would be equally incongruous in this case. Plaintiff has stated a cause of action against Ms. Mache and the Mache Trust.

■ Defendants' motion to dismiss Count II will be granted, however, with regard to NBD Park Ridge Bank and NBD Trust Company. As provided by Ill.Rev. Stat. ch. 17, ¶ 1684(2) (1987):

> A successor trustee shall be under no duty to inquire into the acts or doings of a predecessor trustee, and is not liable for any act or failure to act of a predecessor trustee.

Even if The First National Bank of Des Plaines, as trustee of the Mache Trust at the time of the sale of the property, violated a duty to disclose a latent defect, the subsequent trustees could not be found liable. Accordingly, Count II will be dismissed against NBD Park Ridge Bank and NBD Trust Company.

## C. *Counts III and IV: Negligence and Strict Liability*

In relevant part, Count III of the complaint alleges that:

[A]t the time Defendants undertook the activities herein alleged, they knew or should have known that their operations on the Property could cause spillage, disposal, deposit or dumping of PCBs, if the activities were not undertaken with due care, and that the presence of such PCBs would cause injury to the Property....

... the Defendants failed to exercise due care and take the necessary actions to prevent such spillage, disposal, deposit, or other dumping of PCBs.

(Complaint, ¶¶ 43, 44.) Count IV seeks to impose strict liability on the defendants under the theory that "PCBs are abnormally dangerous substances and the disposal, or release to the environment, of PCBs is an abnormally dangerous activity." (Complaint, ¶ 48.)

In addition to their *Moorman* argument, defendants have moved to dismiss Counts III and IV on the grounds that (1) no facts are alleged which could form a basis for piercing the corporate veil of Delta Die Casting, such that Ms. Mache or the trustees could be found personally liable for the corporation's alleged activities; and (2) the complaint alleges no basis for a finding that the defendants owed any duty to Quadion or that the alleged activities have harmed plaintiff.

■ Defendants' motion must be denied with regard to Ms. Mache and the Mache Trust. As noted above, the allegations of the complaint give rise to the inference that Delta Die Casting was a closely held corporation, the very nature of which is such that stock ownership and company management are often vested in the same person. It is well-established under Illinois law, moreover, that "although [a corporate] officer is not liable for the corporation's torts simply by virtue of his office, corporate officer status does not insulate him from individual liability for the torts of the corporation in which he actively participates." *National Acceptance Co. v. Pintura Corp.*, 94 Ill.App.3d 703, 50 Ill.Dec. 120, 123, 418 N.E.2d 1114, 1117 (2d Dist. 1981). Quadion's complaint alleges that the defendants "deposited and disposed of the PCBs, and permitted said PCBs to accumulate and collect on and in the soil and sub-soil of the Property, the building, structures and improvements thereon or authorized, permitted or ratified said activities." (Complaint, ¶ 18.) Accordingly, the court has concluded that the allegations of the complaint are sufficient to withstand the motion to dismiss Counts III and IV with regard to those shareholders of Delta Die Casting who could have actively participated or authorized the disposal of the PCBs on the property.[6]

## D. *Counts V and VI: Breach of Warranty and Indemnification*

■ Count V alleges that the purchase agreement between Ms. Mache and the Mache Trust as sellers and Quadion as purchaser contained a warranty that Delta Die Casting had no "liabilities, fixed or contingent, known or unknown...." (Complaint, ¶ 54.) The pleading further alleges that:

At the time of the execution of the sales agreement, Defendants knew or should have known that the Property was contaminated with PCBs and that such PCB contamination was a liability or contingent liability.

(Complaint, ¶ 55.) "Defendants' failure to disclose PCB contamination," plaintiffs contend, constitutes a breach of this warranty. (Complaint, ¶ 57.)

Count VI alleges that, in conjunction with the sale of Delta Die Casting, Ms. Mache and the Mache Trust executed a written indemnity agreement, pursuant to which they

agreed to indemnify [Quadion] against any loss, damage or expense, including attorneys' fees and disbursements, suffered as a result of any inaccuracy in or

---

**6.** The court's analysis compels dismissal of Counts III and IV against defendants NBD Park Ridge Bank and NBD Trust Company of Illinois.

As noted above, dismissal of the subsequent trustees is also supported by Ill.Rev.Stat. ch. 17, ¶ 1684(2) (1987).

breach of any of the representations, warranties or covenants made by Defendant Mache in the sale agreement. (Complaint, ¶ 60.) Ms. Mache's failure to disclose that the property was contaminated with PCBs, the complaint alleges, was a breach of warranty entitling Quadion to recovery under the indemnification agreement. (Id., ¶ 61.)

In support of their motion to dismiss these counts defendants initially contend that the complaint fails to allege any basis upon which the court could find that the PCB contamination was a "contingent liability" as the term was used in the parties' contract. "At the time the sales agreement was entered into," defendants argue, "there was no contingent or fixed liability regarding removal of PCB deposits on the Property, because the relevant legislation was still years away." (Defendants' Reply Mem., pp. 10–11.) Defendants conclude that "Mrs. Mache and the Trustees could not therefore have breached their representations and warranties in the Delta–Illinois sales agreement by failing to disclose the existence of a contingent liability." (Id.)

Focusing on the "known or unknown" language in the warranty clause, Quadion contends that the language is ambiguous and that dismissal is therefore inappropriate. (Plaintiff's Mem. in Opposition, p. 12.)

The court believes that the Seventh Circuit's opinion in *Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31 (7th Cir.1987) precludes dismissal of these counts on such a basis. The facts in *Marmon* are quite similar to those of the instant case. Twelve years following the plaintiff's purchase of a gear-manufacturing business, the South Carolina Department of Health and Environmental Control cited plaintiff for certain products which had been found on the property. Plaintiff sought indemnification from the seller under the terms of an agreement which provided, in relevant part, that the seller would indemnify the buyer against "[a]ny and all liabilities of Seller of any nature, whether absolute, accrued, contingent or otherwise, existing at the Closing Date or arising out of any transaction of the Seller. . . ." The district court granted the defendant's motion to dismiss the breach of contract and warranty claims because:

> "the indemnity clause would not encompass liability for a violation of an environmental regulation not in existence at the time of the sale. . . . [I]t is clear that neither could contemplate or discuss a liability which would arise from environmental regulations not enacted when the assets were transferred from defendant to plaintiff."

822 F.2d at 33 (*quoting* from the district court's opinion, No. 85 C 7838, mem.op. at 8 (N.D.Ill. June 16, 1986)). The Seventh Circuit reversed, holding that "before the district court can determine the scope of the indemnity provision, the litigation *must* progress beyond the initial pleading." 822 F.2d at 34, emphasis added.[7]

In the instant case, since Quadion has contended that the warranty and indemnity language of the agreements at issue is ambiguous and since the Quadion's interpretation is not an "impossible" one, the court must deny the defendants' motion. *See Three D Departments, Inc. v. K Mart Corp.*, 670 F.Supp. 1404, 1407 and n. 2 (N.D.Ill.1987).

Defendants have also moved to dismiss Counts V and VI on statute of limitations grounds. Under Illinois law, actions on written contracts must be commenced "within 10 years next after the cause of action accrued. . . ." Ill.Rev.Stat. ch. 110, ¶ 13–206. Since the relevant agreements were executed in 1978, defendants argue, Quadion's suit comes too late.

---

7. The Seventh Circuit specifically noted, in language applicable to this case:

> By our action today, we do not mean to imply that this litigation necessarily need go beyond the summary judgment stage. Indeed, it may well be that further pre-trial exploration will quite firmly establish the allocation of risks that the parties intended.

822 F.2d at 34–35. The court also notes that the principal case relied upon by defendants, *Climatrol Industries, Inc. v. Fedders Corp.*, 149 Ill. App.3d 533, 103 Ill.Dec. 271, 501 N.E.2d 292 (1st Dist.1986), involving the interpretation of a contingent liabilities clause, was resolved at the summary judgment stage.

If the court construes the allegations of the complaint in the light most favorable to Quadion—as it must for purposes of this motion to dismiss—this argument, too, must be rejected. If Ms. Mache and the Mache Trust warranted that the business activities of Delta Die Casting would never result in liability under environmental laws—laws in existence or those passed subsequent to the sale of the company— and promised to remain liable for any violations if they ever occurred, see discussion *supra,* then plaintiff's cause of action on the warranty and indemnification provisions of the sale agreements would not accrue until either the passage of such laws or defendants' refusal to indemnify Quadion when requested to do so. *Cf. Ozark Airlines v. Fairchild–Hiller Corp.,* 71 Ill.App.3d 637, 28 Ill.Dec. 277, 390 N.E.2d 444 (1st Dist.1979) (plaintiff's cause of action under indemnity theory of recovery against supplier of aircraft with whom it had contracted did not "ripen until after the happening of the thing to be indemnified against").

Accordingly, defendants' motion to dismiss Counts V and VI must be denied.

### E. Count VII: Claim for Equitable Relief

■ Count VII of Quadion's complaint is entitled "Restitution; Equitable Accounting, Constructive Trust and Equitable Lien." (Complaint, p. 14.) Essentially Count VII alleges that Ms. Mache, the Mache Trust and the beneficiaries of that trust have been unjustly enriched as a result of Quadion's payment of the costs associated with the PCB cleanup.[8] The complaint seeks restitution, an equitable accounting, a constructive trust and an equitable lien upon the assets of Ms. Mache, her children and the Mache Trust.

Defendants have moved to dismiss the equity count on the theory that since the relationship between Quadion, Ms. Mache and the trustees was contractual, there is no basis for an unjust enrichment claim. Defendants rely primarily upon the Seventh Circuit's opinion in *First Commodity*

*Traders v. Heinhold Commodities, Inc.,* 766 F.2d 1007 (7th Cir.1985). In *Heinhold Commodities* the Seventh Circuit affirmed the district court's grant of partial summary judgment in favor of the defendant on the ground that "[u]nder Illinois law, a plaintiff may not state a claim for unjust enrichment when a contract governs the relationship between the parties." 766 F.2d at 1011.

Despite the language of *Heinhold Commodities,* the procedural posture of defendants' motion precludes dismissal of Count VII. As Judge Bua stated in *Braman v. Woodfield Gardens Associates,* 715 F.Supp. 226, 229 (N.D.Ill.1989), the Federal Rules of Civil Procedure provide that "a party may set forth two or more statements of a claim ... alternately or hypothetically, either in one count ... or in separate counts.... A party may also state as many separate claims ... as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds." Fed.R.Civ.P. 8(e)(2). "Under Rule 8(e)(2)," Judge Bua concluded, "plaintiffs may raise alternative claims of breach of contract and unjust enrichment despite the inconsistency of these claims." 715 F.Supp. at 229. Accordingly, defendants' motion to dismiss Count VII must be denied.

### CONCLUSION

For the reasons set forth herein, defendants' motion to dismiss is DENIED with regard to Counts I, V, VI and VII. NBD Park Ridge Bank and NBD Trust Company are DISMISSED from Counts II, III and IV. In all other respects, defendants' motion is DENIED. Defendants are ordered to file an answer to the amended complaint, in compliance with Local Rule 9(a), on or before June 1, 1990. The parties are encouraged to discuss settlement and report on status at 10:00 a.m. on June 11, 1990.

---

**8.** Defendants' memorandum in support of the motion to dismiss identifies the beneficiaries of the Mache Trust as the children of John and Delores Mache. (Defendants' Mem. in Support, p. 2.)