Gayle CURCIO, Penny Verest, Ellen Waltz, and Connie Weng, Plaintiffs,

v.

CHINN ENTERPRISES, INC., d/b/a Bob Chinn's Crab House and Bob Chinn, Defendants.

No. 95 C 0821.

United States District Court, N.D. Illinois, Eastern Division.

June 5, 1995.

Stephen G. Seliger Mary Lane Mikva Seliger & Mikva, Ltd., Chicago, IL, for plaintiffs.

F. Willis Caruso, Catherine R. Giella, and Janet L. Jannusch, Keck, Mahin & Cate, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiffs Gayle Curcio, Penny Verest, Ellen Waltz, and Connie Weng bring this action against defendants Chinn Enterprises, Inc., d/b/a Bob Chinn's Crab House ("Crab House"), and Bob Chinn ("Chinn"), alleging sex discrimination and retaliation in violation

of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and Illinois state law claims for assault and battery and intentional infliction of emotional distress, in Counts I through IV respectively. Jurisdiction is based on 42 U.S.C. § 2000e *et seq.* and 28 U.S.C. § 1367. Chinn has moved to dismiss all counts against him and Crab House has moved to dismiss Count IV for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6). For the reasons stated below, the court denies defendants' motions.

## BACKGROUND [1]

All four plaintiffs are employed by defendants as waitpersons.[2] The Crab House is one of the largest independent restaurants in the United States, employing over 200 persons and generating revenues in 1993 of more than $18 million. Chinn is the president and controlling shareholder of the Crab House. At all times during plaintiffs' employment, Chinn was head of management and had supervisory authority at the Crab House over all of the employees. According to plaintiffs, Chinn spoke for and was closely identified with the Crab House, often referring to it as "Bob's World."

Plaintiffs allege that throughout their employment, Chinn repeatedly engaged in sexually offensive behavior and made lewd and sexually offensive remarks to and about plaintiffs, other female waitpersons, and female customers. Additionally, Chinn touched or threatened to touch plaintiffs in an offensive and unwelcome manner. He has referred to the plaintiffs and other female employees as "c—nts" and "c—suckers," has made degrading and humiliating sexual innuendoes to plaintiffs, often in the presence of customers, and has made racial and religious slurs. Chinn has pulled the hands of female employees to his crotch in the presence of plaintiffs. Chinn has threatened plaintiffs and other employees with physical harm, such as stating that he would "punch in the face" anyone who littered in the parking lot. He has threatened the plaintiffs with various punishments, which plaintiffs allege were meted out arbitrarily in order to harass and intimidate employees.

Some of the specific incidents that plaintiffs allege include: Waltz observed Chinn being taken away from a table where he had crawled under to look up a woman's skirt; Chinn asked Weng whether she wanted to go upstairs for a "quickie" and "maybe she wasn't getting it at home"; Chinn has leaned his midsection against Weng's back on a number of occasions and rubbed against her while she was working; Chinn has often told Waltz, who is the mother of seven, that she should keep her legs crossed and that he could show her how not to get pregnant; Chinn told Curcio on several occasions in front of customers and other employees that she should lose weight; Verest encountered Chinn and two customers in a stairwell, and Chinn pulled at his crotch and said to her "this is what you really want"; Chinn has called the plaintiffs "stupid" and "f—ing stupid" in front of customers; Chinn told Curcio that her sister, who was very ill and awaiting a bone marrow transplant, was "the biggest f—ing c—t that worked here."

Plaintiffs allege that the Crab House has no posted or written sexual harassment policy and the Crab House has never informed plaintiffs to be aware of any policy at the Crab House of prohibiting sexual harassment. No manager, supervisor, or agent of the Crab House has taken any action to stop Chinn's conduct.

Between November 1994 and January 1995, all of the plaintiffs filed charges of sexual harassment with the Equal Employment Opportunity Commission ("EEOC") against both defendants.[3] Following notifica-

---

1. The facts as set forth below are taken from plaintiffs' complaint and will be accepted as true for the purposes of this motion.

2. Curcio has worked at the Crab House since December 1982; Verest since August 1986; Waltz since August 1989; and Weng since January 1991.

3. On November 29, 1994, Waltz and Curcio filed charges of sexual harassment with the EEOC against both defendants. Weng and Verest filed similar charges on December 6, 1994, and January 3, 1995, respectively. On January 18, 1995, the EEOC issued a Right to Sue letter for all of the harassment charges.

On January 3, 1995, Curcio and Weng filed charges of retaliation against both defendants,

tion of these EEOC charges, plaintiffs Curcio, Waltz, and Weng allege that Chinn began to retaliate against them. Chinn singled out Curcio on several occasions for particular scrutiny and punishment while she was working. Chinn would question Curcio on how she was performing her job and threatened her with "gate duty."[4] Waltz, who had not engaged in any misconduct, was given the punishment of gate duty one Saturday night, causing her to lose money and humiliating her. Additionally, Weng was denied a trainer's bonus that she had received the previous year, and a day manager at the Crab House stated to her that Weng and another trainer who had filed EEOC charges would not get a 1994 bonus because they were "unhappy" with Chinn.

Plaintiffs, upon receiving their Right to Sue notices from the EEOC, filed this four-count compliant: Count I alleges a violation of Title VII based upon sexual harassment; Count II alleges retaliation against three of the plaintiffs; and, Counts III and IV allege assault and battery and intentional infliction of emotional distress under Illinois law. Plaintiffs allege that they have suffered from anxiety, depression, sleeplessness, humiliation, and other mental and emotional injuries as a result of all of Chinn's actions.

In response, defendant Chinn has moved to dismiss Counts I and II, arguing that he is not liable either as an employer or individually under Title VII. Chinn argues that the court, after dismissing Counts I and II, should then decline supplemental jurisdiction of Counts III and IV. Both defendants have also moved to dismiss Count IV, arguing that plaintiff has not alleged sufficiently a claim for intentional infliction of emotional distress under Illinois law.

## STANDARD OF REVIEW

 In ruling on a motion to dismiss, the court must presume all of the well-plead-

ed allegations of the complaint to be true, *Miree v. DeKalb County Ga.*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977), and must view those allegations in the light most favorable to plaintiff. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1034 (7th Cir.1987). Dismissal is proper only if it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

## ANALYSIS

### I. Defendant Chinn

A. Liability of Defendant Chinn for Counts I and II

 Chinn moves to dismiss Counts I and II arguing that he is not an "employer" as defined by Title VII and, therefore, he cannot be held individually liable. The Seventh Circuit has recently addressed the issue of individual liability under the provisions of the ADA, holding that those persons who do not otherwise meet the statutory definition of "employer" cannot be held individually liable. *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279–1282, (7th Cir.1995). The court reviewed Title VII, ADA, and ADEA cases in reaching its decision, and its holding applies equally to all three statutes. *See id.*

Plaintiffs, however, allege that Chinn constitutes an employer under Title VII because he is the "alter ego" of the corporation. As president, controlling shareholder, and head of management with supervisory authority of the Crab House, plaintiffs allege that Chinn was identical to the Crab House. Although the Seventh Circuit's recent holding does not expressly address this type of "alter ego" argument, the court commented on the validity of such an argument in a footnote, indicating that it would be inclined to reject individ-

and Waltz filed retaliation charges on January 9, 1995. On January 18, 1995, the EEOC issued a Right to Sue letter for Weng's and Waltz's retaliation charges. On January 31, 1995, the EEOC issued a Right to Sue letter for Curcio's retaliation charges. This complaint was filed within the requisite 90 days of receiving the Right to Sue notices.

4. As defendants explain in their briefs, when a waitperson is disciplined at the Crab House, one type of discipline used is "gate duty." Gate duty requires a waitperson to work a shift as a host or hostess rather than a waitperson, which results in less money for the evening.

ual liability founded on an alter ego theory. *See id.* at 1282, n. 11. The court, however, held that because the issue had not been raised in the trial court it was not subject to review. Thus, the court of appeals' comment was pure dicta. Until such time as this issue has been fully developed and addressed by the Seventh Circuit, this court will continue to follow its prior rationale as set forth in *Fabiszak v. Will County Bd. of Commissioners,* 94 C 1517, 1994 WL 698509, at *2–3, 1994 U.S.Dist. LEXIS 17712, at *7 (N.D.Ill. Nov. 28, 1994).

In *Fabiszak,* this court held that a supervisor may be liable as an "employer" under Title VII when the supervisor's role is more than that of a mere supervisor but is actually identical to that of the employer. *Id.* There, the supervisor controlled the internal operations of the office and was responsible for appointing employees and for the conduct of his employees. Similarly in the instant case, plaintiffs allege that Chinn was more than a mere supervisor, but was in all respects the actual employer because he was the controlling shareholder and the main decisionmaker, and in effect left no avenue for the employees to object to his misconduct. Taking plaintiffs' allegations as true for purposes of a Rule 12(b)(6) motion, Chinn can be viewed under such circumstances as plaintiffs' employer for the purposes of Title VII. Accordingly, the court denies Chinn's motion to dismiss Counts I and II.

## B. Supplemental Jurisdiction of Counts III and IV

Because Chinn is a proper defendant as an "employer" under Title VII, Chinn's argument that the court should not exercise supplemental jurisdiction over Counts III[5] and IV, the state law claims, is therefore denied.

## II. Motion to Dismiss Count IV

■ Both defendants have moved to dismiss Count IV, intentional infliction for emotional distress under Illinois law, for failure to state a claim pursuant to Fed.R.Civ.P.

12(b)(6). Defendants, in what can only be described as a grand waste of time and resources, have filed four separate motions to dismiss and four separate memoranda of law regarding each individual plaintiff. Each motion, however, is essentially identical in form and substance and will be addressed jointly by the court.

■ Under Illinois law, a claim for intentional infliction of emotional distress must allege: (1) that the defendant's conduct was extreme and outrageous; (2) that the plaintiff suffered severe emotional distress as a result; and (3) that the defendant knew or should have known that such distress was substantially certain to occur from the conduct. *McGrath v. Fahey,* 126 Ill.2d 78, 127 Ill.Dec. 724, 727, 533 N.E.2d 806, 809 (1988). Defendants contend that plaintiffs have failed to allege two essential elements of this claim: (1) extreme and outrageous conduct by defendants; and (2) severe emotional distress suffered by the plaintiffs.

■ A defendant's conduct is considered extreme and outrageous if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Public Finance Corp. v. Davis,* 66 Ill.2d 85, 90, 4 Ill.Dec. 652, 652–654, 360 N.E.2d 765, 765–767 (1976). Liability will not extend to "mere insults [and] indignities." *Id.* Even under the high standard set by Illinois law, conduct that may not otherwise be so considered may rise to the level of extreme and outrageous based on the amount of control that the defendant has over the plaintiff. *McGrath,* 127 Ill.Dec. at 727, 533 N.E.2d at 809. In this instant case, Chinn maintained a position of authority over plaintiffs and, according to plaintiffs, viewed the Crab House as "his world" where he could act as he pleased. If true, Chinn's alleged conduct was an abuse and exploitation of his position of authority, and therefore his conduct may be deemed extreme and outrageous. *See Bailey v. Unocal Corp.,* 700 F.Supp. 396, 399 (N.D.Ill.1988). Further, although the work environment will often contain some rude

**5.** This court notes that, in reviewing Count III of plaintiffs' complaint, the allegations as currently set forth for assault and battery appear to be pled merely in a general manner and lack the specific-

ity regarding each individual plaintiff as will be needed to sustain such a claim. Defendants have not, however, brought this to the court's attention.

and offensive behavior, each individual plaintiff has alleged repeated sexually offensive behavior and remarks from Chinn, their supervisor, and such conduct is "not among the ordinary nuisances endemic to the workplace." *Bilandzic v. Dimensions Med. Center, Ltd.*, 94 C 1192, 1995 WL 89008, at *2, 1995 U.S.Dist. LEXIS 2247, at *6 (N.D.Ill. Feb. 22, 1995). Plaintiffs, therefore, have adequately stated a claim of extreme and outrageous behavior for the purposes of a motion to dismiss.

Defendants' second argument, that plaintiffs have failed to allege severe emotional distress, similarly fails. Under Illinois law, the emotional distress suffered must be such that no reasonable person could be expected to endure it. *Public Finance*, 4 Ill.Dec. at 654, 360 N.E.2d at 767. One factor used in determining the severity of the emotional distress is its duration. *McGrath*, 127 Ill.Dec. at 727, 533 N.E.2d at 809. Plaintiffs allege that they have each been repeatedly subjected to Chinn's conduct for a period of several years. Additionally, plaintiffs are seeking medical and counselling expenses related to these allegations. For the purposes of a motion to dismiss, plaintiffs' allegations are sufficient to state a claim of severe emotional distress.

Finally, defendants argue that plaintiffs' allegations of conduct occurring more than two years before the filing of this claim are time-barred and should therefore be dismissed. In Illinois, any actions for damages from intentional infliction of emotional distress must be commenced within two years after the injury occurred. *See* 735 ILCS 5/13–202. For torts involving a continuing or repeated injury, however, the statute of limitations does not begin to run until the tortious acts cease. *City of Rock Falls v. Chicago Title & Trust Co.*, 13 Ill.App.3d 359, 300 N.E.2d 331, 334 (3d Dist.1973). Because plaintiffs have alleged a course of conduct by Chinn that began with the start of their employment and continued up to the filing of their claims, they have stated a timely claim for intentional infliction of emotional distress.

Plaintiffs have stated a sufficient claim of intentional infliction of emotional distress such that this court cannot hold as a matter of law that plaintiffs would be unable to prove any set of facts to support their claim. Therefore, defendants' motion to dismiss Count IV is denied.

## CONCLUSION

For the reasons set forth above, defendant Chinn's motion to dismiss all counts is denied and defendants' motion to dismiss Count IV is denied.