STEVEN DANIEL JACOBSON *et al.*, Minor Children of Pamela Ellsworth, Deceased, by William Boyle, Guardian and Next Friend, Petitioners, v. BUFFALO ROCK SHOOTERS SUPPLY, INC., *et al.*, Respondents-Appellees (Raymond Bruce Scamen, Adm'r of the Estate of Ronea Scamen, Petitioner-Appellant).

Third District No. 3—95—0683

Opinion filed April 11, 1996.—Rehearing denied May 9, 1996.

James R. Lindig, of Law Offices of Peter F. Ferracuti, P.C., of Ottawa, for appellant.

Tom Dillon, of McFadden & Dillon, of Chicago, for appellees.

JUSTICE McCUSKEY delivered the opinion of the court:

Pamela Ellsworth and Ronea Scamen were both killed in an explosion while employed by Buffalo Rock Shooters Supply, Inc. (Buffalo Rock). The plaintiffs, Steven Daniel Jacobson and Christopher Michael Boyle, the minor children of Pamela Ellsworth, deceased, by their guardian and next friend, William Boyle, filed a complaint seeking to pierce Buffalo Rock's corporate veil and collect a judgment of $251,750 from the corporation's shareholders. The plaintiff, Raymond Bruce Scamen, administrator of the estate of Ronea Scamen, filed an almost identical complaint, also seeking to collect a $251,750 judgment.

Buffalo Rock's shareholders were Elsbeth S. Fullmer, Roger W. Fullmer and Patricia Ann Smith. Roger and Patricia Ann were killed in the same explosion. As a consequence, in both actions, the plaintiffs sought recovery from Elsbeth, individually and as administrator of Roger's estate, and Evelyn Muffler, as administrator of Patricia Ann's estate. The trial court consolidated the complaints. Subsequently, the trial court entered an order which granted a motion to dismiss Roger's and Patricia Ann's estates as defendants and granted judgment in favor of Elsbeth.

On appeal, the plaintiffs argue: (1) the trial court erred when it granted the estates' motion to dismiss; and (2) the trial court should have pierced the corporate veil and enforced the judgments against the shareholders of Buffalo Rock.

Following our careful review of the record, we find the evidence does not support piercing the corporate veil and imposing liability on Buffalo Rock's shareholders. As a result, we affirm because we conclude the trial court's ruling was not against the manifest weight of the evidence.

## FACTS

Buffalo Rock was incorporated on August 11, 1987. Roger and Elsbeth, husband and wife, each received 40 shares in the corporation. Elsbeth's daughter, Patricia Ann, received 20 shares. The shareholders paid a total of $1,000 for these shares. Buffalo Rock was in the business of operating a shooting range. It also sold guns and related equipment and manufactured and sold ammunition. Prior to incorporation, Elsbeth ran the business for 17 years as a sole proprietorship. The assets of the business were sold by Elsbeth to the corporation. A transferee statement showed that Elsbeth transferred $242,155 in assets to Buffalo Rock. Buffalo Rock assumed liabilities of $143,312 for a net transfer of $98,943 in assets. Elsbeth was to receive $1,500 per month for these assets, and she retained title to the real estate on which the business was located.

On October 19, 1987, the shareholders of Buffalo Rock executed a written consent in lieu of a meeting. They ratified the actions taken in incorporating Buffalo Rock and appointed themselves directors. On the same date, the newly appointed directors executed a written consent in lieu of a director's meeting in which they adopted the bylaws of the corporation and elected officers.

After incorporation, Elsbeth was not involved in the operation of the business and never attended a corporate meeting. She stated in her deposition that she did not know what it meant to be an officer of the corporation. Roger and Patricia Ann ran the business. They were

employees of the corporation and received salaries. Roger was paid $4,552 for the period from August 11, 1987, to December 31, 1987. Patricia Ann was paid $4,308 during the same period.

The mortgage on the real estate, held in Elsbeth's name, was paid out of Buffalo Rock's account. The building on the property was used by Buffalo Rock and also by two companies Roger owned, Class III Enterprises and Chevron Case Master. No dividends were ever paid by Buffalo Rock. The bylaws required an annual meeting in August. We note that no meeting was held in August 1988.

Financial statements prepared on behalf of Buffalo Rock showed that, as of December 31, 1987, the assets of Buffalo Rock included $157,010 in inventory and $19,214 in equipment and vehicles, after depreciation. A statement of earnings showed sales in the amount of $248,401 for the five-month period ending December 31, 1987. Net earnings after expenses were shown as $3,379. Buffalo Rock filed state and federal corporate income tax returns for 1987.

On October 7, 1988, the explosion occurred. Roger, Patricia Ann, Pamela Ellsworth and Ronea Scamen were all working that day and were killed. Buffalo Rock's assets were destroyed in the explosion. Buffalo Rock had a general liability insurance policy. However, the policy provided no coverage for the explosion. Moreover, Buffalo Rock had no workers' compensation insurance coverage and was not self-insured for workers' compensation liability.

Subsequently, a $251,750 workers' compensation award was entered against Buffalo Rock on behalf of Ellsworth's children. A $251,750 award was also entered on behalf of Scamen's estate. On August 26, 1992, the circuit court of La Salle County entered judgment against Buffalo Rock on the basis of each award.

On October 8, 1992, the plaintiffs filed their complaints seeking to pierce the corporate veil and collect the judgments from Elsbeth and the estates of Roger and Patricia Ann. Both complaints stated that Buffalo Rock was undercapitalized because it failed to either purchase and maintain workers' compensation insurance or have sufficient assets to be a self-insurer.

Patricia Ann's estate filed a motion to dismiss the complaints, arguing that they were not timely filed under the Probate Act of 1975 (755 ILCS 5/1—1 et seq. (West 1994)). The causes were submitted to the trial court on stipulated evidence. On August 15, 1995, an order was entered which granted the motion to dismiss as to both estates and granted judgment in favor of Elsbeth. The plaintiffs filed timely notices of appeal.

## PIERCING THE CORPORATE VEIL

The plaintiffs argue that the trial court should have pierced Buf-

falo Rock's corporate veil and found its shareholders liable for the judgment against Buffalo Rock. We initially recognize that a reviewing court will not reverse the finding of the trial court regarding piercing the corporate veil unless it is against the manifest weight of the evidence. *In re Estate of Wallen*, 262 Ill. App. 3d 61, 68, 633 N.E.2d 1350, 1357 (1994); *Ted Harrison Oil Co. v. Dokka*, 247 Ill. App. 3d 791, 796, 617 N.E.2d 898, 902 (1993).

■ A corporation is a legal entity which exists separate and distinct from its shareholders, directors and officers. *In re Rehabilitation of Centaur Insurance Co.*, 158 Ill. 2d 166, 172, 632 N.E.2d 1015, 1017 (1994). Accordingly, the shareholders, directors and officers are not, as a general rule, liable for the corporation's obligations. *Wallen*, 262 Ill. App. 3d at 68, 633 N.E.2d at 1357. For a court to pierce the corporate veil and find liability on the part of the shareholders for the corporation's obligations, two principal requirements *must* be met: (1) a unity of interest and ownership that causes the separate personalities of the corporation and the individual to no longer exist; and (2) the presence of circumstances under which adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice or promote inequitable consequences. *Wallen*, 262 Ill. App. 3d at 68-69, 633 N.E.2d at 1357; *Dokka*, 247 Ill. App. 3d at 795, 617 N.E.2d at 901-02.

Courts are reluctant to pierce the corporate veil. *Wallen*, 262 Ill. App. 3d at 68, 633 N.E.2d at 1357; *Dokka*, 247 Ill. App. 3d at 795-96, 617 N.E.2d at 902. Accordingly, a party seeking to pierce the corporate veil has the burden to make a *substantial* showing that the corporation is really a dummy or sham for another dominating entity. *Wallen*, 262 Ill. App. 3d at 68, 633 N.E.2d at 1357; *Dokka*, 247 Ill. App. 3d at 796, 617 N.E.2d at 902.

■ Courts look at numerous factors in determining whether to pierce the corporate veil. *Wallen*, 262 Ill. App. 3d at 69, 633 N.E.2d at 1357-58. These factors include: inadequate capitalization; failure to issue stock; failure to observe corporate formalities; nonpayment of dividends; insolvency of the debtor corporation; nonfunctioning of the other officers or directors; absence of corporate records; commingling of funds; diversion of assets from the corporation by or to a shareholder; failure to maintain arm's length relationships among related entities; and whether the corporation is a mere facade for the operation of the dominant shareholders. *Wallen*, 262 Ill. App. 3d at 69, 633 N.E.2d at 1357-58.

The plaintiffs claim the corporate veil should be pierced because: (1) Buffalo Rock did not observe corporate formalities and did not pay dividends; (2) the corporation paid the mortgage on real estate owned

only by Elsbeth; (3) two businesses owned by Roger operated out of the same building; and (4) the corporation failed to maintain workers' compensation insurance and had no liquid assets available to pay claims against it.

■ We cannot agree with the plaintiffs that Buffalo Rock did not observe corporate formalities. Buffalo Rock completed all of the required documents necessary to its formation. Additionally, Buffalo Rock issued shares of stock and filed the appropriate corporate tax returns. We find that Buffalo Rock merely failed to hold an annual meeting in August 1988. We hold that merely missing one annual meeting is not a sufficient showing of failure to observe corporate formalities. *Cf. Dokka*, 247 Ill. App. 3d at 769, 617 N.E.2d at 902.

It is true that Buffalo Rock did not pay corporate dividends. However, the corporation was in existence slightly more than one year prior to the explosion. Under these circumstances, we find no failure to observe corporate formalities.

The plaintiffs also rely on the fact that Buffalo Rock paid the mortgage on the real estate owned by Elsbeth. They apparently conclude that this constitutes evidence of a diversion of funds to a shareholder. However, Buffalo Rock's business operations were located on the property. The financial statements show that the corporation paid rent for the use of the property. It appears from the record that Buffalo Rock was paying the mortgage as a rental payment for the use of the property.

Also, the plaintiffs note that two businesses owned by Roger operated out of the same building. However, contrary to the plaintiffs' assertion, this bare fact does *not* show that corporate funds or assets were commingled with the funds or assets of Roger's separate businesses.

The remaining facts relied on by the plaintiffs are Buffalo Rock's failure to have workers' compensation insurance and lack of liquid assets to pay its debts. The plaintiffs assert these facts as proof that Buffalo Rock was not adequately capitalized. Again, we disagree with the plaintiffs.

It is well settled that undercapitalization of a corporation is a significant factor in piercing the corporate veil. *Wallen*, 262 Ill. App. 3d at 71, 633 N.E.2d at 1359; *Amsted Industries, Inc. v. Pollak Industries, Inc.*, 65 Ill. App. 3d 545, 552, 382 N.E.2d 393, 399 (1978). " 'An obvious inadequacy of capital, measured by the nature and magnitude of the corporate undertaking, has frequently been an important factor in cases denying stockholders their defense of limited liability.' " *Gallagher v. Reconco Builders, Inc.*, 91 Ill. App. 3d 999, 1005, 415 N.E.2d 560, 564 (1980), quoting *Anderson v. Abbot*, 321 U.S. 349, 362, 88 L. Ed. 793, 803, 64 S. Ct. 531, 538 (1944).

In *Wallen,* the court concluded the corporation was not undercapitalized. The court in that case said the evidence did not show the shareholder intended to minimize the corporation's assets to the detriment of his creditors. *Wallen,* 262 Ill. App. 3d at 71, 633 N.E.2d at 1359. The court in *Wallen* stated that there was "no competent evidence presented to show that the company was undercapitalized in relation to the amount of business conducted or in relation to its corporate obligations." *Wallen,* 262 Ill. App. 3d at 71, 633 N.E.2d at 1359.

Here, in the instant case, the undisputed evidence shows that Buffalo Rock had substantial assets, including inventory and equipment. Buffalo Rock purchased the assets of a business which previously operated for 17 years. Also, the financial statements showed the corporation had significant income from sales. The business income was sufficient for Buffalo Rock to pay its debts and retain net earnings. No evidence is contained in the record that Buffalo Rock minimized its assets to the detriment of its creditors or was undercapitalized in relation to the amount of business conducted or its corporate obligations. Based on the analysis in *Wallen,* we conclude that Buffalo Rock was adequately capitalized. The fact that Buffalo Rock's assets were destroyed in the explosion does not change our analysis.

Finally, we conclude that Buffalo Rock's failure to obtain workers' compensation insurance is not an adequate basis for piercing the corporate veil. It is very unfortunate that Buffalo Rock did not have workers' compensation insurance to cover the tragic death of its employees. However, the failure of a corporation to obtain workers' compensation insurance is not a sufficient basis to pierce the corporate veil and find a shareholder personally liable. *Webb v. Webb,* 180 Ill. App. 3d 619, 621-22, 536 N.E.2d 206, 207-08 (1989).

The court in *Webb* noted the Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1994)) does not provide for individual liability against a corporation's officers and directors. *Webb,* 180 Ill. App. 3d at 622-23, 536 N.E.2d at 208. The court in *Webb* then concluded that any alteration in the Workers' Compensation Act must come from the legislature and not the courts. *Webb,* 180 Ill. App. 3d at 623, 536 N.E.2d at 208. We agree with this conclusion.

## CONCLUSION

The record supports the trial court's finding that Buffalo Rock was a separate entity and was not the alter ego of its shareholders. See *Alpert v. Bertsch,* 235 Ill. App. 3d 452, 461, 601 N.E.2d 1031, 1036 (1992). Therefore, we conclude the plaintiffs failed to make the

substantial showing necessary to pierce Buffalo Rock's corporate veil and impose individual liability on the shareholders. As a result, we find the trial court's ruling was not against the manifest weight of the evidence.

For the reasons indicated, we affirm the judgment of the circuit court of La Salle County.

Affirmed.

SLATER and LYTTON, JJ., concur.