Lynn COMPTON, Plaintiff,

v.

CHINN ENTERPRISES, INC., d/b/a, Bob Chinn's Crabhouse and Bob Chinn, individually, Defendants.

No. 95 C 5461.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 18, 1997.

Susan Renee Bauer, Dennis Ray Favaro, Thill, Kolodz & Favaro, Palatine, IL, for Lynn Compton.

F. Willis Caruso, Janet L. Jannusch, Norma W. Zeitler, James Yunhao Wu, Keck, Mahin & Cate, Chicago, IL, Catherine R. Giella, Stickler & Nelson, Chicago, IL, for Chinn Enterprises, Inc. and Bob Chinn.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Plaintiff Lynn Compton ("Compton") sued Chinn Enterprises d/b/a Bob Chinn's Crabhouse ("the Crabhouse") and Bob Chinn ("Chinn") in a four count First Amended Complaint, alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., assault and battery, and intentional infliction of emotional distress, respectively. On August 14, 1996 the Court denied Defendants' separate Motions to Dismiss. Presently before the Court is Defendants' joint Motion for Reconsideration.

## BACKGROUND

Both Chinn and the Crabhouse moved to dismiss the Illinois tort claims of assault and battery and intentional infliction of emotional distress pursuant to the exclusive remedy provision of the Illinois Human Rights Act (the "Act"). 775 ILCS 5/8–111(C). After extensive analysis, the Court denied the Motion, holding that Section 8–111(C) does not bar the state claims for intentional infliction of emotional distress, assault, and battery. (Mem. Op. & Ord. of Aug. 14, 1996 at 3–12). In so holding, the Court declined to follow several decisions by judges of the Northern District of Illinois, including two in which Chinn and the Crabhouse prevailed on that issue. *Grassmuck v. Chinn Enter.*, 1996 WL 400046 (N.D.Ill. July 15, 1996)(Holderman, J.) & *Cosek v. Chinn Enter.*, 1996 WL 377056 (N.D.Ill. July 1, 1996) (Grady, J.).

Additionally, Chinn moved to dismiss the Title VII claims brought in Counts I and II

against him as the alter ego of his co-defendant corporation, arguing that he cannot be liable under 42 U.S.C. § 2000e as an individual pursuant to *Williams v. Banning*, 72 F.3d 552 (7th Cir.1995) and *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1280 n. 2 (7th Cir.1995). The Court denied the Motion, finding that Chinn was collaterally estopped from relitigating that issue, having litigated and lost the issue in *Curcio v. Chinn Enterprises*, 887 F.Supp. 190 (N.D.Ill. 1995).[1] *See Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390 (7th Cir.1986)(reversing district court's failure to give denial of motion to dismiss preclusive effect). In so holding, the Court followed *Grassmuck v. Chinn Enter.*, No. 95 C 3729, 1996 WL 400046, at *2–3 (N.D.Ill. July 15, 1996) and *Cosek v. Chinn Enter.*, No. 94 C 6660, 1996 WL 377056, at *1–2 (N.D.Ill. July 1, 1996), 1995 WL 699723, at *1 (N.D.Ill. Nov.24, 1995), the same cases in which Chinn

---

1. The *Curcio* court rejected Chinn's argument that he may not be sued as the alter ego of his co-defendant corporation. The holding was partially premised on the non-binding nature of the following dicta in *AIC*:

> The EEOC also argues that even if individuals cannot be liable under the ADA, [the defendant] can somehow be liable as [the employer]'s "alter ego." However, this argument is forfeited because it was not raised before the district court.... In any case, we see no good reason why it should made any difference for our analysis whether [the defendant] was [the employer]'s alter ego. She might be effectively liable if the corporate veil were pierced, and as sole shareholder she will necessarily absorb the pinch from AIC's liability, but as to her individual capacity liability it does not matter even if she was [the employer]'s alter ego. 55 F.3d at 1282 n. 11 (citation omitted).

As the *Curcio* court noted, the issue had not been "fully developed and addressed by the Seventh Circuit." 887 F.Supp. at 194. This is demonstrated in the statement "She might be effectively liable if the corporate veil were pierced, ... but as to her individual capacity liability it does not matter even if she was [the employer]'s alter ego." The statement is confusing because the remedy of piercing the corporate veil is merely the method by which an alter ego is held liable. For example, the Illinois Supreme Court has explained the doctrine of piercing the corporate veil as follows:

> The concept of disregarding the corporate existence and imposing liability personally upon the real parties to a transaction is well established and is summarized in 19 C.J.S., Corporations, § 839, p. 264: "Where the director or

officer is the **alter ego** of the corporation, that is, where there is such unity of interest and ownership that the separateness of the individual and corporation has ceased to exist, and the facts are such that an adherence to the fiction of separate existence of the corporation would sanction a fraud or promote injustice, such director or officer will be held liable for the obligations of the corporation."

*People ex rel. Scott v. Pintozzi*, 50 Ill.2d 115, 122–23, 277 N.E.2d 844 (1971)(emphasis added).

Perhaps the Seventh Circuit was referring to the situation where a plaintiff secures a judgment against a corporation that goes unsatisfied and then brings an action seeking to pierce the corporate veil and collect the award from the corporation's alter ego. *See. e.g., Jacobson v. Buffalo Rock Shooters Supply, Inc.*, 278 Ill.App.3d 1084, 215 Ill.Dec. 931, 664 N.E.2d 328 (3d Dist.1996). However, typically, as in the present case, the plaintiff sues both the corporation and the alter ego in the same action, thereby preempting the subsequent action to pierce the corporate veil. *See, e.g., Washington Courte Condo. Assoc.–Four v. Washington–Golf Corp.*, 267 Ill.App.3d 790, 205 Ill.Dec. 248, 643 N.E.2d 199 (1st Dist.1994); *Fentress v. Triple Mining, Inc.*, 261 Ill.App.3d 930, 200 Ill.Dec. 1, 635 N.E.2d 102 (4th Dist. 1994); *Alpert v. Bertsch*, 235 Ill.App.3d 452, 176 Ill.Dec. 333, 601 N.E.2d 1031 (1st Dist.1992). In either case, the alter ego is held liable for the corporation's obligation.

Based upon the foregoing, this Court concluded that the pure dicta of *AIC* does not counsel against granting the *Curcio* decision preclusive effect. Nor does the subsequent decision of *Williams v. Banning*, 72 F.3d 552 (7th Cir.1995), as it did not touch upon the alter-ego issue.

and the Crabhouse prevailed on the Illinois Human Rights Act issue.

## ANALYSIS

■ Defendants initially argued in their Motion for Reconsideration that, because the *Grassmuck* court, which gave preclusive effect to *Curcio*, dismissed the Illinois tort claims, "if collateral estoppel precludes this Court from reconsidering the individual liability issue, it also precludes this Court from reconsidering whether the Illinois Human Rights Act precludes Compton's state law court claims."[2] Of course, as Plaintiff correctly submits, Defendants' argument is meritless: "It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 649 n. 7, 58 L.Ed.2d 552 (1979). In reply, Defendants wisely retract their erroneous argument and state "[i]n moving this Court for reconsideration, Defendants merely wish to point out the unfairness of applying collateral estoppel in the instant case." Specifically, Defendants argue that the Court's application of collateral estoppel is unfair because

> rather than join that action and cast her lot with the *Curcio* plaintiffs, Plaintiff filed a separate action (as she was certainly entitled to do) and now selectively invokes the doctrine of collateral estoppel to preclude Defendants from relitigating certain issues (while ignoring those not helpful to her case). In effect, Plaintiff argues Defendants are bound by the *Curcio* decision as to the individual liability of Defendant Chinn but Plaintiff is not bound by any decision favorable to Defendants. This is precisely the type of unfair use of collateral estoppel that the Supreme Court cautioned against in *Parklane Hosiery*. *See* 439 U.S. at 329–33, [99 S.Ct. at 650–53].

(Reply at 2).

Defendants' new argument widely misses the mark as well. First, the Court previously entertained, and rejected, Defendants' argument as to Plaintiff's failure to join the first action, finding that she is not a wait-and-see plaintiff, because her claim rests upon independent facts. (Mem. Op. & Ord. of Aug. 14, 1996 at 14). Thus, the argument is not cognizable here. Second, the "selective invocation" argument appears to resurrect the initial argument rejected above and, in so doing, further demonstrates a fundamental misapprehension of the doctrine of collateral estoppel.[3] As explained above, the *Curcio* court's dismissal of the state claims does not collaterally estop Plaintiff, as she has never previously litigated that issue. Regardless, collateral estoppel results in issue preclusion. Accordingly, the resolution of other issues is completely irrelevant to the propriety of estopping relitigation of the issue in question.

■ Finally, the Court is mystified by Defendants' characterization of Chinn being bound on the Title VII issue and Compton not being bound on the other issues as "precisely the type of unfair use of collateral estoppel that the Supreme Court cautioned against in *Parklane Hosiery*," with a citation to five pages of that decision. None of the Supreme Court's examples of unfair estoppel involved such a situation. Perhaps Defendants' argument derives from its misapprehension of the scope of collateral estoppel, namely, to an issue that was actually litigated by the party against whom it is applied. Specifically, the Court gave three examples where offensive use of collateral estoppel may be unfair: if (1) the defendant had little incentive to vigorously defend the first suit; (2) "the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant"; and (3) procedural opportunities in the second action were unavailable in the first and "could readily cause a different result." 439 U.S. 322, 99 S.Ct. at 651. Although Defendants have not specified which example is "precisely the type here," the Court presumes that they invoke the second,

---

2. Unlike the court in *Grassmuck*, the *Curcio* court did not consider whether the Illinois Human Rights Act preempts the state law claims.

3. Notably, the argument that Plaintiff "ignored" issues not helpful to her case is curious; rather, Plaintiff persuasively argued against dismissal of the state tort claims.

as the first and third are facially inapposite here. However, the second is also inapposite, as the *Curcio* court's denial of Chinn's Motion to Dismiss the Title VII claim, upon which the Court relied as a basis for the estoppel, has not been shown to be inconsistent with one or more previous judgments in favor of Defendants. In other words, it is not akin to

> Professor Currie's familiar example, [in which] a railroad collision injures 50 passengers all of whom bring separate actions against the railroad. After the railroad wins the first 25 suits, a plaintiff wins in suit 26. Professor Currie argues that offensive use of collateral estoppel should not be applied so as to allow plaintiffs 27 through 50 automatically to recover.

*Id.* at 331 n. 14, 99 S.Ct. at 651 n. 14. Professor Currie's example is also inapposite to the extent Defendants rely upon it in support of the proposed finding that offensive use of collateral estoppel in this case would "not promote judicial economy in the same manner as defensive use does," a finding that would counsel against collateral estoppel. *Id.* at 329, 99 S.Ct. at 650. As the Court previously explained, unlike the railroad-collision plaintiffs, Compton's claims arise from independent facts.

### CONCLUSION

For the reasons given, the Court DENIES Defendants' Motion for Reconsideration.